[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO STRIKE (#143)
On April 13, 1990, the plaintiffs, Economic Development, a general partnership, John Conte, Kenneth Gallo and John Duchnowski, the individual partners, instituted this action against the defendant, Cititrust. In a ten count complaint the plaintiffs allege the following. On or about September 27, 1988, in order to finance the construction of Riverside Commons, the plaintiffs executed a mortgage note and construction deed in favor of the defendant for $1,200,000.00. Pursuant to the terms of the loan agreement, the defendant was to advance the principal sum to the plaintiffs in installments, in accordance with a construction schedule prepared by the defendant. The time and amount of each installment was to be at the sole discretion of the defendant.
On or about September 27, 1988, the defendant advanced certain funds to the plaintiff and the development and construction of Riverside Commons commenced. On or about May 26, 1989, the defendant notified the plaintiff that the installments were being discontinued. At no time on or before said date was the plaintiff in default or in breach of any terms of the loan agreement. Thereafter the parties entered into negotiations aimed at resuming the installment payments. In December of 1989, however, the defendant suddenly declared the note matured and the plaintiff in default. CT Page 2240
In counts one through four of the complaint the plaintiff, Economic Development alleges facts in support of a cause of action for: breach of loan agreement, count one; breach of an implied covenant of good faith and fair dealing; count two; breach of a fiduciary duty, count three; and violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. 42-110b, count four.
In counts five through ten of the complaint, the individual partner plaintiffs alternatively allege facts in support of a cause for: violation of the Connecticut Unfair Trade Practices Act (CUTPA), counts five, seven and nine; and third party beneficiary-breach of loan agreement, counts six, eight and ten.
On August 7, 1990, the defendant filed a motion to strike numerous paragraphs and counts of the plaintiffs' complaint and a supporting memorandum of law. On August 14, 1990, the plaintiffs filed a memorandum of law in opposition to the motion to strike.
On November 21, 1990, the court (Dranginis, J.) issued a memorandum of decision and granted the motion to strike as to the request for punitive damages in counts two and three and in addition, granted the motion to strike as to counts four through ten. The court denied the motion to strike as to all other counts.
On February 21, 1991, the court (Dranginis, J.) indicated that it would sua sponte reconsider the defendant's motion to strike dated August 7, 1990.
The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170
(1988). The motion admits all well pleaded facts, but not conclusions of law. Maloney v. Convoy, 208 Conn. 392, 394 (1988). The facts alleged in the complaint are to be construed in a manner most favorable to the pleader. Biro v. Hill, 214 Conn. 1, 2 (1990). A motion to strike is the proper vehicle to test the legal sufficiency of a CUTPA claim. Ivey, Barnum 
O'Mara v. Indian Harbor Properties, Inc., 190 Conn. 528, 531 (1981).
The defendant first moves to strike paragraphs nineteen and twenty of the first count and paragraphs twenty and twenty one of the second count which allege damage to the partnership's reputation and credit rating. However, these counts also allege economic hardship and monetary loss based on the defendant's alleged breach of the loan agreement. If a count of a complaint purports to set out more than one cause of action, a motion to strike addressed to the entire count fails is it does not reach all of the causes of action pleaded. Wachtel v. Rosol, 159 Conn. 496, 499 (1970). Since the claim of monetary loss based on a breach of contract would still be viable if the aforementioned paragraphs were stricken, the defendant's attempt to strike these paragraphs must fail. See Id. at 499. Moreover, a motion to strike directed at particular paragraphs of a complaint is CT Page 2241 improper.
Northrup v. Town of Clinton, 14 Conn. Sup. 28, 31 (1946).
The defendant seeks to strike the second count of the complaint on the grounds that there does not exist a tort claim for breach of an implied covenant of good faith and fair dealing. An implied covenant of good faith and fair dealing arising out of a contractual relationship has been explicitly recognized in Connecticut. Magnum v. Anaconda Industries,193 Conn. 558, 566 (1984). A breach of an implied contractual covenant of good faith and fair dealing gives rise to a distinct tort claim. Grand Sheet Metal Products Co. v. Protection Mutual Ins. Co., 34 Conn. Sup. 46, 51
(1977). In a case of first impression, a Connecticut court has allowed a claim for breach of an implied covenant of good faith and fair dealing in the context of a lender-borrower relationship. Sorvillo v. Strother,2 CSCR 1095 (October 1, 1987, Leuba, J.).
The defendant next moves to strike the plaintiff's claim for punitive damages relating to counts two and three. A breach of contract founded on tortious conduct may allow an award of punitive damages. L. F. Page Sons, Inc. v. Travelers Indemnity Co., 9 Conn. App. 30, 48 (1986). Such tortious conduct, however must be alleged it terms of wanton and malicious injury and evil motive or in terms of a reckless indifference for the rights of others. Id. at 48; Triangle Sheet Metal Works, Inc. v. Silver,154 Conn. 116, 128 (1966), Since the plaintiff has failed to allege his claim or punitive damages in these terms, the prayer for relief seeking such damages is stricken as to counts two and three.
The defendant also moves to strike the third count of the complaint on the grounds that the plaintiff has failed to allege a breach of a fiduciary duty. The Connecticut Supreme Court has "specifically refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations." Alaimo v. Royer, 188 Conn. 36, 41 (1982). Such a relationship appears to be a question of fact reserved for the trier of fact. See Id. at 41. Therefore, it is inappropriate to decide such an issue on a motion to strike. Flanagan v. Valente, 31 Conn. Sup. 143, 145 (1974); Sargent Co. Employees Federal Credit Union v. McElveen, 16 Conn. Sup. 366,367 (1949).
The defendant next seeks to strike counts four, five, seven and nine of the complaint on the ground that CUTPA is not applicable to the conduct of banks.
The Connecticut Unfair Trade Practices Act (CUTPA) was enacted by the Connecticut General Assembly in 1973, Conn. Gen. Stat. 42-110a et seq. Conn. Gen. Stat. 42-110b provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. 42-110a (4) defines "trade" or "commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services CT Page 2242 and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."
"CUTPA was designed by the legislature to put Connecticut in the forefront of state consumer protection." Heslin v. Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510, 515 (1983). "The policy behind CUTPA is to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices." Hernandez v. Monterey Village Associates Limited Partnership, 17 Conn. App. 421, 425 (1989).
The standards developed by the Federal Trade Commission (FTC) are looked to by our courts in an effort to determine what constitutes a cognizable unfair or deceptive practice under CUTPA. Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 179 (1986). CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. Web Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 354 (1987).
The Connecticut Supreme Court has not addressed the issue of whether CUTPA applies to banks. See Graynor v. United Trust, 216 Conn. 458, 482
(1990). The court, however, has recently issued a decision which examines the standards to be employed in reviewing a CUTPA claim. In Connolly v. Housing Authority, 213 Conn. 354 (1990) the court held that a "municipal housing authority is exempted from liability under CUTPA when it leases subsidized rental units to low income tenants." Id. at 365. In reaching this conclusion the court relied on Russell v. Dean Witter Reynolds, Inc.,200 Conn. 172, 180 (1986), (CUTPA is inapplicable to deceptive securities practices) and determined that CUTPA is inapplicable to transactions which are "(1) explicitly subject to a different and specifically applicable statutory remedy; and (2) not among the types of transactions to which the Federal Trade Commission Act has been applied." Id. at 354.
In the present case, the defendant relies on Connelly, in support of it's motion to strike. The defendant argues that it is a bank organized under the laws of the State of Connecticut and as such is subject to pervasive state regulations. See Conn. Gen. Stats. 36-1, et seq., and Regs of Conn. State Agencies, Sec. 36-243c-5 and 36-243c-6 (regulation of conduct and practices of loan institutions). Additionally, the defendant maintains that the Federal Trade Commission Act ("FTCA") is the "lodestar for determining the scope of CUTPA", Connelly,213 Conn. at 363, and the FTCA expressly exempts banks from its coverage.
While recognizing that there is a conflict of authority in the Superior Court on the issue of whether CUTPA applies to banks, the defendant urges this court to adopt the reasoning of Bristol Savings v. Sattler,4 CSCR 351 (March 29, 1989, Aronson, J.) and People's Bank v. Horesco,1 CSCR 62 (January 22, 1986, Jacobsen, J.) affirmed on other grounds,205 Conn. 319 (1987). These cases found that banks are exempt from CUTPA due to an express exemption from coverage under the FTCA,15 U.S.C. § 45 (a)(2). CT Page 2243
A significant majority of Superior Court decisions, however, have determined that CUTPA is applicable to banks. Bristol Savings v. Szydlowski, 3 CTLR 146 (January 28, 1991, O'Connor, J.); Ebersol McCormick v. Torrington Savings Bank, 4 CSCR 499 (May 26, 1988, Pickett, J.) and Wiseman v. Westport Bank Trust, 1 CSCR 283 (April 30, 1986, Zoarski, J.). The thrust of these decisions is two fold: (1) CUTPA is a remedial statute and should be broadly construed and (2) CUTPA has no explicit exemption which precludes banks from its ambit and as such CUTPA may be found to apply to banking activities.
This conflict of authority in the superior courts needs to be addressed in order to preserve the balance between the legislature's intent that the FTCA serve as the guide for determining the scope of CUTPA and the need for CUTPA to continue as a consumer protection statute which is remedial and broadly construed. It is possible for CUTPA to apply to banks without destroying the legislatures' intent that CUTPA be guided by the FTCA.
The Federal Trade Commission Act expressly exempts banks from its coverage, 15 U.S.C. § 45 (a)(2), thus there can be no interpretation under the FTCA on the issue of whether CUTPA applies to banks. If the Connecticut legislature wanted to directly parallel the FTCA and expressly exempt banks from the coverage of CUTPA, it certainly could have done so. "[T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces." Plourde v. Liburdi, 207 Conn. 412, 417 (1988). As such the legislature is presumed to know that the FTCA expressly exempts banks from its coverage. The legislature, however, chose not to follow this course. Instead the legislature enacted Conn. Gen. Stat. 110c which is the exception section to the CUTPA statute. This statute provides in relevant part: "Exceptions (a) Nothing in this chapter shall apply to: (1) transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the state or of the United States. . . .
It is this statute which serves as the basis for the court's decision in Connelly, 213 Conn. 354, holding that CUTPA is inapplicable to transactions which are "explicitly subject to a different and specifically applicable statutory remedy." Id. at 362.
This court, however, must examine CUTPA in light of "its legislative history, its language, the purpose it is to serve and the circumstances surrounding its enactment." Verrastro v. Sivertsen, 188 Conn. 213, 221
(1982). CUTPA was enacted as a consumer protection statute, Heslin,190 Conn. at 515, and provides a private cause of action for actual and punitive damages. Conn. Gen. Stat. 42-110g. The banking statutes, however, are enforced by the banking commissioner, Conn. Gen. Stat. 36-1. Moreover, the defendant relies on the fact that it is a state-chartered savings bank regulated by state banking laws. A review of the banking statutes, however, indicates no pervasive provisions which establish the rights CT Page 2244 and responsibilities of banks to their customers. The banking statutes in this state do not constitute the pervasive regulations relied on by the Supreme Court in Russell, 200 Conn. 172 and Connelly, 213 Conn. 354.
The issue of whether CUTPA applies to banks ultimately depends upon the type of activities in which the bank is allegedly engaged. When a bank is engaged in consumer oriented activities, CUTPA should apply. This is especially important on a motion to strike when the court must construe the facts in a manner most favorable to the pleader.
Moreover, a CUTPA claim should not be alleged as a vehicle to obtain attorneys' fees. While recognizing that the legislature encourages attorneys to accept and litigate CUTPA cases by providing in Conn. Gen. Stat.42-110g(d) for awards of attorneys' fees and costs, Hernandez,17 Conn. App. at 425, the decision to award attorneys' fees ultimately rests in the sound discretion of the court. Chrysler Corporation v. Maioco, 209 Conn. 579, 590 (1989).
In determining whether a practice violates CUTPA, a court should employ the following criteria:
 (1)[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].
Sanghari v. Paul Revere Life Inc. Co., 214 Conn. 303, 311-312 (1990).
All three criteria need not be satisfied to support a finding of unfairness and a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser degree it meets all three. Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 242 (1987). In counts four, five, seven and nine of the complaint the plaintiff has incorporated by reference the allegation that the plaintiffs were given assurances that the installment payments would be resumed and despite these assurances the defendant suddenly declared the mortgage note matured and the plaintiff in default. These allegations are sufficient to state claim under CUTPA and the motion to strike counts four, five, seven and nine is denied.
The defendant also moves to strike counts five through ten on the ground that these counts are legally insufficient because the plaintiffs have split a cause of action belonging to the partnership, and are seeking a double recovery of damages. Conn. Gen. Stat. 42-110g provides in relevant part that: "[a]ny person who suffers any ascertainable loss. . .as a result of the use or employment of a method, act or practice. . .may bring an action. . . ." Conn. Gen. Stat. 42-110a
CT Page 2245 defines person as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity." (emphasis added).
"In judging a motion to strike, . . .it is of no moment that the plaintiff may not be able to prove his allegations at trial." Levine v. Bess Paul Sigel Hebrew Academy of Greater Hartford, Inc., 39 Conn. Sup. 129,132 (Super.Ct. 1983). "The sole inquiry at this stage of the pleadings is whether the plaintiffs' allegations if proved state a cause of action." Babych v. McRae, 41 Conn. Sup. 280, 282 (1989, Schaller, J.).
The allegations contained in counts five through ten of the plaintiffs' complaint cannot be said to be legally insufficient and the motion to strike is denied.
Lastly, the defendant seeks to strike the entire complaint for failure to join Carmine Ioanna as a necessary party in this action. The determination as to whether Carmine Ioanna is a necessary party in this particular action requires the consideration of facts outside the pleadings. Since such information cannot be considered on a motion to strike, the defendant's argument on this point must fail. Kilbride v. Dushkin Publishing Group, Inc., 186 Conn. 718, 719 (1982).
For the foregoing reasons, the motion to strike is granted as to the request for punitive damages in counts two and three and denied as to all other counts of the complaint.
DRANGINIS, J.