[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
INTRODUCTION AND FACTUAL BACKGROUND
The present action concerns a dispute between the parties to a real estate loan agreement as to the application of insurance proceeds following a fire which substantially damaged the mortgaged property. The facts as alleged in the plaintiffs' revised complaint filed February 28, 1994 are as follows. CT Page 10300
On June 2, 1989, the plaintiff, Plymouth Commons Realty Corporation ("Plymouth") obtained a loan from the defendant, Northeast Savings, F.A. ("Northeast") in the principal amount of $1,000,000.00, secured by a mortgage on property known as Village Plaza. The loan was personally guaranteed by the plaintiffs Louis and Joan Ursini. On April 27, 1991, after the bank had commenced an action to foreclose the mortgage, there was a fire which destroyed a substantial portion of the property.
The plaintiffs commenced this action to recover for damages they allegedly incurred as a result of the defendant's handling of the insurance claims process following the fire. The complaint is in four counts. The plaintiffs allege that they were injured as a result of the defendant's negligence, breach of contract, breach of the duty of good faith and fair dealing, and unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110(a) et seq.
The factual allegations which describe the bank's conduct are repeated in each of the four counts. These allegations relate to claims of misfeasance, nonfeasance and intentional wrongdoing by the defendant in handling the claims process; in failing to allow the plaintiff to rebuild following the fire; and in failing to act in a commercially reasonable manner.[1]
The defendant now moves to strike the complaint in its entirety arguing that the plaintiffs have failed to allege sufficient grounds to sustain their claims of negligence, breach of contract, breach of the duty of good faith and fair dealing or a violation of CUTPA. Both sides have submitted memoranda of law in support of their respective positions.
DISCUSSION
A motion to strike tests the legal sufficiency of a pleading.Ferryman v. Groton, 212 Conn. 138, 142 (1989). A motion to strike admits all facts well-pleaded and those necessarily implied from the allegations. Id. The court "must take the facts to be those alleged in the plaintiff's complaint and construe the complaint in the manner most favorable to sustaining its legal sufficiency."Warner v. Konover, 210 Conn. 150, 152 (1989). If the facts provable under the allegations would support a cause of action, the motion must fail. Mingachos v. CBS Inc., 196 Conn. 91, 108-09. It is in this manner that the court will view the allegations of the plaintiffs' revised complaint in determining the legal CT Page 10301 sufficiency of the four counts contained therein.
 A.
The relationship of the parties involved in this real estate transaction is complex. Essentially, what brings this action to this court is the following: a debtor, a creditor, a real estate transaction, a loan, a mortgage, some personal guarantees, an insurance policy, a foreclosure action and a fire. It is hardly surprising that certain disagreements arose which could not be resolved without resorting to litigation.
Nonetheless, despite the multi-faceted interests involved, the basic dispute can be summed up in basically simple terms. The plaintiffs believe they have been damaged by the actions of the bank. The bank, on the other hand, believes that even if this is true, it had every right to act as it did.
The bank relies on the mortgage itself as the basis of its rights. The defendant essentially argues that even if the plaintiffs are displeased with the way the claims process was handled, they cannot complain now because they had previously reached an agreement with respect to the insurance of the property. That agreement, as expressed in the mortgage, provides in relevant part:
 Insurance. [Plymouth] shall keep the property insured for the benefit of [Northeast] against loss or damage by fire . . . . [A]ll policies . . . shall be payable, in case of loss or damage, to [Northeast] as the first mortgagee, and shall contain the standard no-contributing mortgagee clause entitling [Northeast] to collect all proceeds payable under all such insurance. . . [Plymouth] hereby authorizes [Northeast], at its option, to collect, adjust and compromise any losses under any of the insurance policies, to endorse [Plymouth's] name on any document or instrument in payment of any insured loss and, after deducting the costs of collection, to apply the proceeds, at [Northeast's] sole option, as follows: (i) as a credit upon the indebtedness secured hereby, whether or not the same shall be due and payable, . . . or (ii) to repairing or restoring the Premises or any part thereof. . . . CT Page 10302
 I.
The defendant argues that because it acted within the scope of its contractual obligations with the plaintiffs, the factual allegations of the first and second counts do not state claims for negligence and breach of contract, respectively. This court agrees.
 a.
It is undisputed that the existence of a duty of care is an essential element of negligence. Coburn v. Lenox Homes, Inc.186 Conn. 370, 375 (1982). A duty may arise by various means, including the need to use care arising out of a contract, from a statute, or from circumstances under which a reasonable person knew, or should have known, that harm of the general nature complained of would likely result from his failure to act. Id., 378.
The defendant argues that "the only rights and obligations by and among [itself] and the plaintiffs were created by the express language of the loan documents." It argues further that, because the plaintiffs have not alleged any other relationship among the parties that would create specific duties to which Northeast would be held, over and above the terms of the loan agreement, the plaintiffs have failed to adequately allege a breach of a duty owed to them.
The plaintiffs challenge this. They claim that the defendant's argument that they had a contractual right to the insurance proceeds oversimplifies the issue. The plaintiffs assert that "this court must determine, notwithstanding the contractual right, whether a duty be imposed upon the mortgagee when it exercises that right, it must do so in a non-negligent manner."
In this court's view, the plaintiffs' argument is conclusory and unpersuasive. The plaintiffs concede that the defendant had the right to collect the insurance proceeds. However, they are disgruntled because of the way the defendant exercised its rights. The plaintiffs primary complaint is that the defendant exercised its right under circumstances which increased the damages to the plaintiff.
It is well-established that a plaintiff must allege a breach CT Page 10303 of a duty in order to state a cause of action based on a negligence theory. This, the plaintiffs herein have not done by merely alleging that the defendant did something that it had an express and unequivocal right to do under the contract. Accordingly, the motion to strike the first count is granted.
 b.
The defendant also moves to strike the second count, which alleges breach of contract. The defendant asserts that it acted in strict accordance with the express terms of the mortgage in applying the insurance proceeds to the matured debt. The plaintiffs do not dispute this, but argue that "the strict adherence to the terms, while ignoring well-settled rules of law such as mitigation of damages, implied duty of good faith and fair dealing, clearly become actionable in the context of this suit.
Whether or not the defendant has ignored certain "well-settled rules of law", it has not breached the express terms of the contract, nor have the plaintiffs adequately alleged such conduct. Accordingly, the motion to strike the second count is granted.
 II.
In the third count of the revised complaint, the plaintiffs claim that the defendant breached its duty of good faith and fair dealing. The plaintiffs' argument in this regard is twofold. First, the plaintiffs claim that the bank had a duty to allow the plaintiffs to rebuild rather than apply the insurance proceeds to the outstanding debt. Second, the plaintiffs argue that the bank had a duty to act in a manner which would not substantially increase the plaintiffs' damages.
An implied covenant of good faith and fair dealing arising out of a contractual relationship has been explicitly recognized in Connecticut. See Magnan v. Anaconda Industries, Inc. 93 Conn. 558,566 (1984). The claim has also been allowed in a lender/borrower relationships. See, e.g., Morrissey v.Connecticut National Bank, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 506035 (February 23, 1993, Hennessey, J.); Connecticut National Bank v. Anderson,6 CSCR 943 (October 1, 1991, Picket, J.); Economic DevelopmentAssociates v. Cititrust, 6 CSCR 400 (March 27, 1991, Dranginis, CT Page 10304 J.).
The implied covenant of good faith and fair dealing "is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract. . . ." Magnan v. Anaconda Industries. Inc., supra, 657.
With respect to the plaintiffs' claim that they should have been permitted to rebuild the property, the defendant points out that "the language of the mortgage is quite clear as to Northeast's right to compromise the claim . . . and to elect, at its sole option, to apply the proceeds to the outstanding debt." Moreover the defendant argues that to imply a covenant of good faith to compel the bank to allow the borrower to rebuild would significantly impair the bank's security.[2]
The plaintiffs dispute this later argument. In their view, rebuilding the property would not impair the defendant's security. Rather, the plaintiffs argue, the property would then be worth more, and the bank's security would be enhanced by virtue of the cash flow from tenants who occupied the building following reconstruction.
In this court's view, it is unnecessary to decide who has the better argument on this "collateral" issue. "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . ." Magnan v. AnacondaIndustries, Inc., supra, 556, quoting Restatement (Second) Contracts, § 205 (1979). The contract agreed upon by the parties entitled the defendant to elect at its sole option, what to do if the property were damaged by fire. The option was to rebuild the property or apply the insurance proceeds to the debt. In the absence of any allegations indicating an improper purpose[3], the defendant has not breached any covenant of good faith and fair dealing by selecting one option over the other.
Count Three also contains allegations concerning the manner in which the defendant handled the insurance claims process. Specifically, the plaintiffs allege, inter alia, that the defendants filed proofs of loss that did not correctly reflect the plaintiffs' actual losses and that the defendant engaged in CT Page 10305 conduct which delayed the resolution of the insurance settlement. The plaintiffs argue that this conduct constituted a breach of the covenant of good faith and fair dealing. The defendant did not address these contentions in it brief.
The issue for the court at this juncture is not whether the plaintiffs can prove these claims, but simply whether the complaint, construed most favorably to the plaintiffs, is sufficient to adequately set out a cause of action. While recognizing that the bank had a contractual right to apply the insurance proceeds to the outstanding debt, this court agrees with the plaintiffs that they had a reasonable expectation that this right would be exercised in a manner so as not to increase their damages.
The plaintiffs have alleged that the defendant delayed in resolving the insurance claim, and incorrectly informed the insurer of the actual loss. In this court's view, the plaintiff has sufficiently alleged, and should be afforded the opportunity to prove, that these actions increased their losses and were inconsistent with the defendant's duty of good faith and fair dealing. Accordingly, the motion to strike the third count of the complaint is denied.
 III.
In the fourth count of their revised complaint, the plaintiffs claim that the conduct of the defendant violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The defendant argues that the factual allegations of this count do not state a claim for a violation of CUTPA. Unfortunately, both sides concentrated primarily on the issue of whether or not CUTPA applied to banks. This issue was resolved inNormand Josef Enterprises, Inc. v. Connecticut National Bank,230 Conn. 486 (1994). In that case, our Supreme Court held that CUTPA does in fact apply to banks.
The Normand Josef decision guides, but does not dictate the result in the present case. Quite obviously the fact that CUTPA applies to banks does not indicate that the factual allegations alleged in the plaintiffs' complaint state such a claim. In this court's view they do not.
As previously discussed while addressing the legal sufficiency of the first three counts of the complaint, the bank CT Page 10306 did not engage in any legal wrongdoing by electing to apply the insurance proceeds to the outstanding debt. The allegations comprising the plaintiffs' only actionable claim, that they were damaged by the defendant's conduct during the insurance claims process, do not rise to the level of a CUTPA violation.
Our Supreme Court has adopted the following criteria for determining when a trade practice is unfair:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers.
(Citations omitted.) McLaughlin Ford, Inc. v. Ford Motor Co.,192 Conn. 558, 568 (1984).
The allegations that the defendant delayed in resolving the insurance claim and filed an incorrect proof of loss simply do not make out a claim for a violation of this statute.
As in Normand Josef Enterprises. Inc. v. Connecticut NationalBank, supra, this alleged conduct did not offend public policy, implicate the concepts of immorality or unethical behavior or cause the type of substantial injury that CUTPA was designed to address.[4] Accordingly, the plaintiffs have failed to state a claim for relief under CUTPA and the motion to strike the fourth count is granted.
DOUGLAS S. LAVINE JUDGE, SUPERIOR COURT