THELMA CONNELLY ET AL. *v.* HOUSING AUTHORITY OF THE CITY OF NEW HAVEN
(13738)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued November 7, 1989—decision released January 2, 1990

*Alice Bauer,* with whom were *Shelley E. White* and, on the brief, *Jon Alander,* for the appellants (plaintiffs).

*Frank Cochran,* with whom was *Edmund Winterbottom,* for the appellee (defendant).

*Clarine Nardi Riddle,* attorney general, and *Robert M. Langer* and *Stephen R. Park,* assistant attorneys general, filed a brief for the state of Connecticut as amicus curiae.

COVELLO, J. This is an appeal from the decision of the trial court, *DeMayo, J.,* which granted summary judgment in favor of the defendant housing authority

of the city of New Haven (housing authority). The dispositive issue is whether a municipal housing authority, acting as landlord, may be held liable for violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We hold that the acts of municipal housing authorities are exempt from the operation of CUTPA and that the trial court did not err in granting summary judgment in favor of the defendant.

The relevant facts are undisputed. On December 10, 1981, six low income tenants of the Elm Haven Extension apartments (Elm Haven)[1] filed a class action lawsuit on behalf of all the tenants of Elm Haven against the defendant, which owns and operates these federally subsidized low income apartments.[2] The plaintiffs alleged that the defendant had violated state law by not providing adequate heat and hot water to its tenants due to faulty boilers, plumbing, pumps and heating systems in the apartment buildings.[3] The plaintiffs

[1] The Elm Haven Extension apartments consist of six separate buildings, each eight stories in height, located at 120 Canal Street, 180 Canal Street, 185 Ashmun Street, 225 Ashmun Street, 250 Ashmun Street and 265 Ashmun Street. The buildings were constructed in 1954. They are presently vacant and scheduled for demolition.

[2] The housing authority of the city of New Haven is an independent public authority created pursuant to General Statutes § 8-40 to operate federally subsidized low income family housing projects. The housing authority receives money from the United States department of housing and urban development to subsidize the operation of the various housing units that it owns throughout the city, and is subject to both applicable state law and the provisions of the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq., and its implementing regulations in title 24 of the Code of Federal Regulations.

[3] The executive director of the housing authority, Samuel Franklin, testified before the trial court at the injunction hearing that the problems with the heat and hot water delivery system were long standing due to the age of the system and to endemic vandalism. The heat and hot water for the six buildings were generated at a central boiler room, which contained one inoperative and two operative boilers. Many of the components were original equipment in need of replacement. Franklin testified that regular repair work was performed by the housing authority maintenance staff, but that

alleged that as a result they had been subjected, during the period from November 1, 1981, through March 31, 1982, to various health risks arising from the defendant's "continuing to rent out apartments to the plaintiffs which lack[ed] adequate and or stable heat and hot water" supplies.

The plaintiffs sought injunctive relief and damages in two counts. The first count alleged that the defendant's failure to provide adequate heat and hot water to the Elm Haven tenants violated the obligations imposed upon landlords by General Statutes § 47a-7[4]

major renovations were paid for by special federal grants. He further testified that in 1981 the housing authority entered into two contracts for substantial renovation of the heat and hot water delivery systems at Elm Haven, including replacing worn pumps and relining one boiler.

Franklin further testified that on November 13, 1981, before work under the renovation commenced, the main boilers broke down and left the entire project without heat and hot water for two days. On December 10, 1981, this action was commenced. Repairs to the heat and hot water system, once begun, were completed by March 31, 1982.

[4] General Statutes § 47a-7 provides: "LANDLORD'S RESPONSIBILITIES. (a) A landlord shall: (1) comply with the requirements of chapter 368o and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant, a member of his family or other person on the premises with his consent, in which case such duty shall be the responsibility of the tenant; (3) keep all common areas of the premises in a clean and safe condition; (4) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities and appliances and elevators, supplied or required to be supplied by him; (5) provide and maintain appropriate receptacles for the removal of ashes, garbage, rubbish and other waste incidental to the occupancy of the dwelling unit and arrange for their removal; and (6) supply running water and reasonable amounts of hot water at all times and reasonable heat except if the building which includes the dwelling unit is not required by law to be equipped for that purpose or if the dwelling unit is so constructed that heat or hot water is generated by an installation within the exclusive control of the tenant or supplied by a direct public utility connection.

"(b) If any provision of any municipal ordinance, building code or fire code requires a greater duty of the landlord than is imposed under subsec-

and by the municipal housing code.[5] The second count alleged that the defendant's actions constituted unfair and deceptive trade practices in violation of CUTPA.

tion (a) of this section, then such provision of such ordinance or code shall take precedence over the provision requiring such lesser duty in said subsection.

"(c) The landlord and tenant of a single-family residence may agree in writing that the tenant perform the landlord's duties specified in subdivisions (5) and (6) of subsection (a) and also specified repairs, maintenance tasks, alterations, or remodeling, provided the transaction is entered into in good faith and not for the purpose of evading the obligations of the landlord.

"(d) The landlord and tenant of a dwelling unit other than a single-family residence may agree that the tenant is to perform specified repairs, maintenance tasks, alterations or remodeling if (1) the agreement of the parties is entered into in good faith; (2) the agreement is in writing; (3) the work is not necessary to cure noncompliance with subdivisions (1) and (2) of subsection (a) of this section; and (4) the agreement does not diminish or affect the obligation of the landlord to other tenants in the premises."

[5] The code of the city of New Haven provides in pertinent part: "Code of the City of New Haven, vol. III, Title V, Par. 300. Basic facilities for dwelling units. No person shall occupy as owner-occupant or let to another for occupancy any dwelling or dwelling unit, for the purpose of living, sleeping, cooking, or eating therein, which does not comply with the following requirements:

\* \* \*

"(e) Water heat facilities. The water-heating facilities necessary to provide the hot water required under sub-paragraph (a), (b) and (c) of this paragraph and paragraphs 405 and 412 shall be properly installed and connected to the hot water lines required under those sections, shall be maintained in safe and good working conditions, and shall be capable of heating water to such a temperature as to permit an adequate amount of water to be drawn at every required kitchen sink, lavatory basin, bathtub or shower at a temperature of not less than one hundred and twenty (120) degrees Fahrenheit. Such supplied water-heating facilities shall be capable of meeting the requirements of this subsection when the dwelling, dwelling unit, rooming house, or rooming unit heating facilities required under the provisions of paragraph 400 and subparagraph (e) of paragraph 301 are not in operation."

"Code of the City of New Haven, Vol. III, Title V, Par. 301. Light, heat, ventilation facilities; owner or lessor must furnish in living premises. No person shall occupy as owner-occupant or let to another for occupancy any dwelling or dwelling units, for the purpose of living therein, which does not comply with the following requirements:

\* \* \*

"(e) Heating facilities. Every dwelling or dwelling unit shall be supplied with heating facilities which are properly installed, are maintained in safe

On December 22, 1981, after a hearing on the plaintiffs' motion for a temporary injunction, the trial court, *Foti, J.,* issued an injunction enjoining the defendant from failing to make repairs to the Elm Haven heating systems, and ordering the defendant to make immediate repairs in order to restore adequate and uniform supplies of heat to the plaintiffs' apartments. On February 10, 1982, the trial court denied the defendant's motion to strike the second count of the complaint. The court rejected the defendant's claim that, as a municipal housing authority, it was exempt from liability for its actions under CUTPA, and, in the alternative, that none of the acts and practices alleged in the complaint were unfair or deceptive within the meaning of CUTPA.

On November 13, 1987, the defendant filed a motion for judgment on the pleadings, or in the alternative, for summary judgment, on the ground that CUTPA does not apply to the providing of essential services to tenants by municipal housing authorities. The trial court, *DeMayo, J.,* granted the defendant's motion for summary judgment on the ground alleged herein. The

and good working condition, and are capable of safely and adequately heating all habitable rooms, bathrooms and water closet compartments located therein to a temperature of at least sixty-eight degrees (68) Fahrenheit at a distance three (3) feet above floor level when outdoor temperature is ten degrees (10) Fahrenheit. Either central or space heating facilities may be used but must meet the following requirements:

"(1) Central heating, central hot water facilities. Every heating unit and/or central hot water heating unit shall:

"(A) Have every heat duct, steam pipe and/or hot water pipe free of leaks and functioning properly to provide an adequate amount of heat and/or hot water to the intended place or delivery;

"(B) Be provided with seals between sections of hot air furnaces to prevent the escape of noxious gases into heat ducts;

"(C) If employing electricity, be connected to an electric circuit of adequate capacity in an approved manner; and

"(D) Be provided with automatic or safety devices and be installed and operated in the manner required by the statutes, ordinances and regulations of the State of Connecticut and the city. . . ."

trial court held that municipal housing authorities are exempt from CUTPA under General Statutes § 42-110c[6] and were excluded from CUTPA as they do not engage in trade or commerce within the meaning of the act. The court further held that under *Russell* v. *Dean Witter Reynolds, Inc.,* 200 Conn. 172, 510 A.2d 972 (1986), the defendant is not liable under CUTPA because municipal housing authorities are regulated under the Landlord and Tenant Act, General Statutes § 47a-1 et seq., and because the Code of Federal Regulations is silent on whether municipal housing authorities' transactions are the subject of Federal Trade Commission action.

On April 3, 1989, the plaintiffs filed this appeal with the Appellate Court. We thereafter transferred this appeal to ourselves pursuant to Practice Book § 4023.

The plaintiffs' claims for damages in count two of their complaint fail because they are premised solely on CUTPA. Even if it is assumed, arguendo, that the defendant is engaged in "trade" or "commerce" as defined by that act, the defendant nonetheless is exempted from CUTPA scrutiny because, as a municipal housing authority regulated by the United States department of housing and urban development (HUD), its actions fall within the ambit of General Statutes

---

[6] General Statutes § 42-110c provides: "EXCEPTIONS. (a) Nothing in this chapter shall apply to: (1) Transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States; or (2) acts done by the publisher, owner, agent or employee of a newspaper, periodical or radio or television station in the publication or dissemination of an advertisement, where the publisher, owner, agent or employee did not have knowledge of the false, misleading, unfair or deceptive character of the advertisement, and did not have direct financial interest in the sale or distribution of the advertised product or service.

"(b) The burden of proving exemption, as provided in this section, from the provisions of this chapter shall be upon the person claiming the exemption."

§ 42-110c. Section 42-110c provides in relevant part: "EXCEPTIONS. (a) Nothing in this chapter shall apply to: (1) Transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States . . . ."

In the present case, the "transactions or actions otherwise permitted under law" are the continued leasing or renting of subsidized apartments to low income tenants.[7] In *Conaway* v. *Prestia,* 191 Conn. 484, 491, 464 A.2d 847 (1983), we ruled that the leasing or renting of apartment or dwelling units fell within the purview of CUTPA. See also *Daddona* v. *Liberty Mobile Home Sales, Inc.,* 209 Conn. 243, 255, 258–59, 550 A.2d 1061 (1988); *Eamiello* v. *Liberty Mobile Home Sales, Inc.,* 208 Conn. 620, 648, 652–56, 546 A.2d 805 (1988). In the present case, however, the actions of the defendant, a creature of statute, are expressly authorized and pervasively regulated by both the state department of housing and HUD. As such, the plain language of § 42-110c exempts the leasing or renting of apartments by the defendant from CUTPA scrutiny. Clear and unequivocal statutes cannot be extended beyond their plain meaning. See General Statutes § 1-1 (a); *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987); *State* v. *Pellegrino,* 194 Conn. 279, 284, 480 A.2d 537 (1984); *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 231, 477 A.2d 988 (1984).

In *Russell* v. *Dean Witter Reynolds, Inc.,* supra, we held that CUTPA was not applicable to the sale of secu-

---

[7] The plaintiffs argue that continued occupation of their apartments without reasonable supplies of heat and hot water is action not "otherwise permitted," citing federal regulations requiring the inclusion of heat and hot water in public housing leases. Those regulations, however, do not require the apartments to be vacated while renovations are performed, and it is not claimed that the defendant intentionally deprived the plaintiffs of heat or hot water.

rities because such transactions are: (1) explicitly subject to a different and specifically applicable statutory remedy; and (2) they were not among the types of transactions to which the Federal Trade Commission Act (FTC Act) has been applied. Id., 175–84.

The transactions of this defendant clearly fall within the rationale of *Russell*. The defendant is subject to pervasive state regulation pursuant to the provisions of chapter 128 of the General Statutes governing municipal housing projects; § 8-38 et seq.; and to pervasive federal regulation pursuant to the relevant provisions of the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq., and its implementing regulations in title 24 of the Code of Federal Regulations. The state statute and the federal regulations set forth in great detail the municipal landlord's responsibilities and provide carefully balanced procedural and substantive remedies for public housing tenants in a variety of situations.[8] These specific statutory remedies carefully balance the rights and obligations of municipal housing authorities and their tenants, and prescribe specific procedures

---

[8] See, e.g., General Statutes § 8-43, which authorizes the removal of housing authority commissioners for inefficiency, neglect of duty or misconduct; § 8-44a, which discusses programs for rehabilitation and repair of housing projects; § 8-45, which provides for rentals and tenant selection in low rental projects and fixes maximum income limit, and prohibits disqualification of applicants on the ground that the household contains illegitimate children; § 8-45a, which prohibits a housing authority from refusing to rent accommodations to otherwise qualified applicants on the ground the applicant has a prior criminal record; § 8-48, which provides for rentals to persons receiving welfare aid; § 8-51, which renders each housing project subject to the planning, zoning, sanitary and building laws, ordinances and regulations applicable to the locality in which each project is situated; § 8-56, which empowers a housing authority to borrow state and federal funds in order to construct, maintain or operate a housing project; § 8-60 (c), which provides for the installation of streets, roads and sidewalks in housing projects; § 8-60 (e), which discusses the provision of essential services to housing projects; § 8-60 (f), which provides for the repair, closing or demolition of unsafe or unfit dwellings; § 8-67, which provides a specific remedy for injury suffered on housing authority property; § 8-68d, which

designed to implement repair or rehabilitation of dwellings. None of these specific statutory provisions makes reference to CUTPA. The carefully crafted equilibrium between the competing interests of municipal housing authorities and public housing tenants embodied in title 8 and the HUD regulations would be upset by holding that a CUTPA remedy, lacking the procedural prerequisites and specifically tailored remedies of either § 8-38 et seq. or the federal regulations, applies in addition to those remedies.

Further, as we noted in *Russell* v. *Dean Witter Reynolds, Inc.,* supra, 179–80, the history of the FTC Act is the lodestar for determining the scope of CUTPA. After a review of cases decided under the FTC Act over its seventy-five year history, and of the standards and statements of the FTC, we were unable to

requires each housing authority to submit an annual report to the commissioner of housing; and § 8-68e, which authorizes the provision of financial assistance to housing authorities for the rehabilitation of uninhabitable dwelling units.

Similarly, the relevant provisions of the federal Housing Act of 1937, 42 U.S.C. § 1437 et seq., authorize making available financial assistance to public housing agencies in order to improve the physical condition of public housing projects and to upgrade the management and operation of these projects, and authorize the agencies to issue such regulations as are necessary to carry out the purposes of the act. See, e.g., 42 U.S.C. § 1437*l*; see also 42 U.S.C. § 1408, which authorizes the United States Housing Authority to make, amend and rescind such rules and regulations as may be necessary to carry out the provisions of the Housing Act of 1937.

Title 24 of the Code of Federal Regulations contains the myriad HUD regulations governing the operation and management of public housing projects by municipal housing authorities. The regulations provide specific procedures and remedies too numerous to be listed here in their entirety. See 24 C.F.R. § 850.101 et seq., § 881.101 et seq., § 882.101 et seq., § 883.101 et seq., § 892.101 et seq. In brief, the applicable regulations establish housing quality standards and establish the responsibilities of housing authorities to maintain dwellings in a safe and sanitary condition and timely to repair or rehabilitate those dwellings that do not comply with the established standards. The regulations establish specific standards and guidelines for the maintenance, operation and inspection of housing projects. They also provide a federal housing-preference in favor of tenants involuntarily displaced due to the condition of their dwelling units.

discover any instance in which that act has been applied to any act or practice of a local public agency, including a housing authority. We also failed to discover any instance in which the FTC Act has been applied to any landlord because of the breakdown of heat or hot water delivery systems.[9] In *FTC* v. *Colgate-Palmolive Co.*, 380 U.S. 374, 85 S. Ct. 1035, 13 L. Ed. 2d 904 (1965), the United States Supreme Court discussed the history and proper role of the FTC Act, and the issues approximating those pleaded in the present case are conspicuously absent. See *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, 190 Conn. 528, 533–36, 539–40, 461 A.2d 1369 (1983). The trial court was correct when it determined that under the *Russell* rationale, CUTPA did not apply.

Summary judgment is appropriate when all the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; *Burns* v. *Hartford Hospital*, 192 Conn. 451, 455, 472 A.2d 1257 (1984); *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 11, 459 A.2d 115 (1983). The test is whether a party would be entitled to a directed verdict on the same facts. *State* v. *Goggin*, 208 Conn. 606, 616, 546 A.2d 250 (1988); *Batick* v. *Seymour*, 186 Conn. 632, 647, 443 A.2d 471 (1982).

There is no material fact in dispute. Whether the defendant is subject to CUTPA is a question of law,

---

[9] The plaintiffs cite two cases as examples of FTC jurisdiction over landlord and tenant matters: *FTC* v. *Century 21 Commodore Plaza, Inc.*, Trade Reg. Rep. (CCH) ¶ 21,709 (June 9, 1980); *FTC* v. *MacLeod Mobile Homes, Inc.*, Trade Reg. Rep. (CCH) ¶ 21,397 (July 25, 1979). The cases are inapposite, however, because they involve "tying" arrangements between leases and sales, and do not involve adjudications on the merits. Also, neither case involves the maintenance of essential services by a public housing agency. See also *In the Matter of Century 21 Commodore Plaza, Inc.*, 95 F.T.C. 808 (June 9, 1980); *In the Matter of MacLeod Mobile Homes, Inc.*, 94 F.T.C. 144 (July 25, 1979).

not fact. See *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985). By virtue of General Statutes § 42-110c, a municipal housing authority is exempted from liability under CUTPA when it leases subsidized rental units to low income tenants. We hold that, as a matter of law, the failure of the defendant to provide adequate and stable heat and hot water to tenants does not give rise to a claim for damages against it under CUTPA. Accordingly, the trial court did not err in granting summary judgment in favor of the defendant.

There is no error.

In this opinion the other justices concurred.