[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The plaintiff moves to strike: 1) defendant Davis' fifth special defense alleging CUTPA; 2) counts one through four of defendant Davis' counterclaim on the ground that Davis fails to allege recognizable causes of action; 3) count five of defendant Davis' counterclaim on the grounds that CUTPA does not apply to banking institutions.
The plaintiff, Connecticut National Bank (hereinafter CNB), instituted this action seeking payment of promissory notes issued to defendant Alliance Petroleum Industries, Inc. (hereinafter Alliance) and guaranteed by defendants Kenneth Davis and Basil Jones. The following facts are alleged in the plaintiff's complaint and the defendant Davis' counterclaim and special defenses.
On October 16, 1986, Alliance executed a Line of Credit Note with Home Bank and Trust whereby the sum of $100,000 was paid to Alliance and Alliance agreed to repay the sum of $100,000, all advances made to Alliance, and interest on demand. On the same day, defendants Davis and Jones executed a continuing guaranty agreement whereby each defendant unconditionally guaranteed the payment of all existing and future obligations of Alliance. CNB subsequently acquired Home Bank and Trust and assumed all of its outstanding notes.
On April 29, 1987, Alliance obtained a loan in the amount of $30,000 from CNB. On January 4, 1988, Alliance CT Page 5256 obtained another loan from CNB in the amount of $50,000. CNB never notified Davis of either of these loans and none of the loan proceeds were used to satisfy an arrearage on the $100,000 loan issued by Home Bank and Trust. Despite demand, the defendants have failed to pay CNB and therefore, the notes are in default.
The plaintiff filed its original complaint on February 13, 1990 seeking payment on the three notes. Defendant Davis filed an answer and four special defenses on May 11, 1990.[1] On October 31, 1991, Davis filed a request for leave to amend his answer to include a fifth special defense asserting that plaintiff's actions and practices violated the Connecticut Unfair Trade Practices Act (hereinafter CUTPA), and to add a five-count counterclaim.[2] Plaintiff's objection to defendant Davis' request for leave to amend was overruled by the court (Wagner, J.) on December 2, 1991. Counts one and two of Davis' counterclaim allege that Davis was not notified of the two loans given by CNB to Alliance as was required under the continuing guaranty agreement signed by Davis. The third count of Davis' counterclaim alleges misapplication of the proceeds of the loans given by CNB to Alliance. The fourth count alleges that CNB acquired Home Bank and Trust and that the notes and guaranty in question became the property of CNB. The fifth count alleges that CNB's activities and practices concerning failure to notify a continuing guarantor of subsequent loans, the management and satisfaction of debts, and making fraudulent representations, constitute unfair and deceptive trade practices under CUTPA.
The plaintiff moved to strike the defendant Davis' fifth special defense and each count in the counterclaim on December 27, 1991 and filed an accompanying memorandum of law.[3]
Davis filed his objection to the plaintiff's motion to strike and memorandum of law on January 16, 1992.
The motion to strike contests the legal sufficiency of the allegations of a pleading. Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989); Practice Book 152. In ruling on a motion to strike, the court is limited to the facts alleged in the challenged pleading. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988). The motion to strike admits all facts well-pleaded, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). "`[I]f facts provable under the allegations would support a defense or cause of action, the demurrer [motion to strike] must fail.' (Citations omitted.)" Ferryman v. Groton, supra, 142, quoting Alarm Applications, Inc., 179 Conn. 541, 545,427 A.2d 822 (1989). CT Page 5257
A. Fifth Special Defense
The plaintiff first argues that Davis' fifth special defense, alleging a violation of the CUTPA, should be stricken for legal insufficiency since CUTPA does not apply to banks. Davis' fifth special defense alleges that CNB's practice of granting loans guaranteed under a continuing guaranty agreement without notifying the guarantor is a violation of CUTPA. However, CUTPA is a remedial statute that gives rise to a cause of action and is not properly raised as a special defense. See Chrysler First Wholesale Credit, Inc. v. Spicer, Superior Court, Judicial District of New London, Docket Number 517727 (September 24, 1991, Mihalakos, J.). Therefore, plaintiff's motion to strike Davis' fifth special defense is granted.
B. Counterclaim
1. Counts One through Four
"The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." Farrell v. St. Vincent's Hospital,203 Conn. 554, 557, 525 A.2d 954 (1987). The burden is upon defendant Davis to allege a recognizable cause of action in each count of his counterclaim. See DeMello v. Plainville,170 Conn. 6755, 677, 368 A.2d 1210 (1987).
The first count of Davis' counterclaim alleges that Alliance obtained a loan from Home Bank and Trust in the amount of $100,000 and that he executed a guaranty for that loan whereby he unconditionally guaranteed the payment of all existing and future obligations of Alliance. Davis then alleges that after Home Bank and Trust was acquired by CNB, Alliance obtained a loan of $30,000 from CNB, and CNB never notified Davis of that loan. The second count incorporates the facts alleged in the first count but addressed a subsequent loan given by CNB to Alliance for $50,000. However, Davis does not plead the legal effect of these allegations. The third count incorporates the facts as pled in the first two counts and then adds an allegation that the loans given by CNB "were not used to satisfy the arrearage" of previous notes granted to Alliance by Home Bank and Trust. The fourth count alleges that despite assurances by an official of Home Bank and Trust, prior to Davis' execution of the guaranty, the notes would remain an asset of Home Bank and Trust and would not be assigned, transferred, or become the property of another institution, CNB acquired Home Bank and Trust and the notes and the guaranty in CT Page 5258 question became the property of CNB.
The burden is upon Davis to plead recognizable causes of action. We find that the facts pled in counts one through four of Davis' counterclaim are not sufficiently recognizable as constituting any valid causes of action. In addition, since the causes of action are not recognizable, the counts do not apprise opposing counsel of the issues to be tried. Accordingly, counts one through four of Davis' counterclaim are stricken.
2. Fifth Count-CUTPA
CNB also seeks to strike the fifth count of Davis' counterclaim on the ground that CUTPA does not apply to banking institutions. General Statutes 42-110b(a) states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In order to determine whether a practice violates CUTPA, the courts utilize the following criteria:
 (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . .
(Citations omitted). Sanghavi v. Paul Revere Life Ins. Co.,214 Conn. 303. 311-12, 572 A.2d 307 (1990); Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747, 474 A.2d 780 (1984). The Connecticut Supreme Court has also acknowledged the statement of the Federal Trade Commission (hereinafter FTC) that all three criteria need not be satisfied to support a finding of unfairness and a practice may be deemed unfair because of the degree to which it meets one of the criteria. Atlantic Richfield v. Canaan Oil Co., 202 Conn. 234, 242,500 A.2d 1008 (1987).
While there have been no Connecticut appellate decisions addressing the issue of whether CUTPA applies to banking institutions, there have been a significant number of conflicting decisions on the issue in the superior court. A majority of these decisions have held that CUTPA is applicable to banks. See, e.g., Faitella v. North Atlantic Planning Corporation, 5 CTLR 431 (January 6, 1992, CT Page 5259 Byrne, J.); Economic Development Associates v. Cititrust, 3 CTLR 517, 519-21 (March 27, 1991, Dranginis, J.); Bristol v. Szydlowski, 3 CTLR 146 (January 7, 1991, O'Connor, J.); Ebersol McCormick v. Torrington Savings Bank, 4 CSCR 499
(May 26, 1989, Pickett, J.); Weisman v. Westport Bank and Trust, 1 CSCRT 283 (April 30, 1986, Zoarski, J.). But cf. Andrus v. Maloney, 5 CTLR 313 (December 9, 1991, Maicco, J.) (CUTPA does not apply to banks); People v. Horesco, 1 CSCR 62
(January 22, 1986, Jacobsen, J.), aff'd on other grounds,205 Conn. 319, 533 A.2d 250 (1987) (CUTPA is not applicable to banking institutions).
In Economic Development Associates v. Cititrust, supra, the court (Dranginis, J.) in upholding a CUTPA claim against a bank, discussed the criteria set forth in Connelly v. Housing Authority, 213 Conn. 354, 362, 567 A.2d 1218
(1990). In Connelly, supra, the Connecticut Supreme Court examined the standards to be employed in reviewing a CUTPA claim and held that CUTPA is inapplicable to transactions that are: "(1) explicitly subject to a different and specifically applicable statutory remedy; and (2) not among the types of transactions to which the Federal Trade Commission Act has been applied." Connelly v. Housing Authority, supra, 362. See also Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 180, 510 A.2d 972 (1986).
The court in Economic Development Associates, applying the factors set forth in Connelly, first determined that since the Federal Trade Commission Act (hereinafter FTCA) expressly exempts banks from its coverage, "there can be no interpretation under the FTCA on the issue of whether CUTPA applies to banks." Economic Development Associates, supra, 520. The court further determined that, "[i]f the Connecticut legislature wanted to directly parallel the FTCA and expressly exempt banks from the coverage of CUTPA, it certainly could have done so." Id., 520. The court noted:
 "[T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces." Plourde v. Liburdi, 207 Conn. 412, 417 (1988). As such the legislature is presumed to know that the FTCA expressly exempts banks from its coverage. The legislature, however, chose not to follow this course. Instead the legislature enacted Conn. Gen. Stat. 42-110c
which is the exception section to the CUTPA statute. This statute provides in relevant part: "Exceptions CT Page 5260 9a) Nothing in this chapter shall apply to: (1) transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under regulatory board or officer acting under statutory authority of the state or of the United States . . ." It is this statute which serves as the basis for the court's decision in Connelly, 213 Conn. 354, holding that CUTPA is inapplicable to transactions which are "explicitly subject to a different and specifically applicable statutory remedy." Id. at 362.
Id., 520. While CUTPA was enacted as a consumer protection statute and provides a private cause of action for actual and punitive damages, a review of the banking statutes, which are enforced by the banking commissioner, "indicates no pervasive provisions which establish the rights and responsibilities of banks to their customers." Id. Thus, the court in Economic Development Associates, held that "[t]he issue of whether CUTPA applies to banks ultimately depends upon the type of activities in which the bank is allegedly engaged. When a bank is engaged in consumer-oriented activities, CUTPA should apply." Id.
We adopt the reasoning of Economic Development Associates and view the allegations of the fifth count of Davis' counterclaim in light of the court's analysis in that case.
In the present action, Davis seeks to apply CUTPA to banking activities concerning the granting of mortgages guaranteed by a continuing guaranty contract. The granting of mortgages is a consumer-oriented activity and, as such, subject to the provisions of CUTPA. Accordingly, plaintiff's motion to strike the fifth count of Davis' counterclaim is denied.
HENNESSEY, JUDGE