[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: APPLICATION FOR PREJUDGMENT REMEDY
The plaintiffs seek this prejudgment remedy wherein they claim that the defendants acted to deprive them of fair hearing before the Office of Emergency Medical Services ("OEMS"), which resulted in loss of business. The plaintiffs claim the actions of the defendants constituted "CUTPA" violations, interferences with business expectancies and governmental process and fraudulent CT Page 1890 nondisclosure. The basic facts are not in dispute. The defendant Gentile was the director of OEMS. The other individual defendants were either officers or directors of the plaintiffs' competitor company, Medstar, Inc. (hereinafter Medstar defendants). The plaintiffs and the defendant Medstar both sought geographic rights for professional services in the City of Waterbury and OEMS held a hearing to determine these territorial rights before Attorney Christine Spak, the designated hearing officer. The hearings commenced on or about January 12, 1989, and continued on various dates until May 23, 1989. Attorney Spak issued her report on or about September 5, 1989; a final decision was not approved and issued by Deputy Commissioner Kerrigan until December 26, 1990. The defendant Gentile, in his position as director of OEMS, acted as an advisor to Attorney Spak. On or about August 30, 1989, the defendants Gentile and the other individual defendants, all officers or stockholders of Medstar formed a corporation CAG Associates. On September 7, 1989, Mr. Gentile resigned his position with OEMS to take effect October 5, 1989. On or about September 6, 1989, Gentile entered into an employment agreement with CAG, Inc.
The plaintiffs claim that the defendant Gentile, "by virtue of his ex parte communication and business dealings. . .deprived the plaintiffs of a fair hearing." Whether the communications between Gentile and the other Medstar defendants constituted a statutorily prohibited ex parte communication depends on whether these communications were prohibited under Section 4-181. Under that statute, communications must be with one "assigned to render a decision or to make a finding of fact." Mr. Gentile was not assigned to make a decision or make a finding of fact. Attorney Spak and Deputy Commissioner Kerrigan were the ones assigned to those duties. The court finds that any communications between Gentile and the Medstar defendants, even if they were made at times claimed by the plaintiff, were not ex parte communications prohibited by Section 4-181.
The plaintiffs next argue that the communications between Gentile and the Medstar defendant, resulted in Gentile influencing Attorney Spak which resulted in the decision unfavorable to the plaintiffs. The plaintiff argues that the court can reasonably infer these facts from the facts that were proved. The court concedes that the fact finder may draw reasonable inferences from existing facts. Orico v. Williams 139 Conn. 714. That Gentile and the Medstar defendants actually filed corporate papers with the secretary of state on August 3, 1989, the court can reasonably CT Page 1891 find that they met before that date to develop this business relationship. The court does not believe that this union between Gentile and the Medstar defendants was conceived on July 31, 1989, and it is certainly conceivable that these parties began to formulate their plans at times suggested by the plaintiffs. In addition, the court can reasonably find that the business relationship formed by the Medstar people was intended to influence Gentile to be partial to their business interests and did so influence Gentile. Those inferences are fair and reasonable given the facts proved. It is the next step that the court is unwilling to make. The court will not infer that because the Medstar defendants intended to adversely influence Gentile and that Gentile was a willing participant that Gentile did in fact influence Attorney Spak and ultimately the final decision maker. The court finds that this inference is not reasonable and is not consistent with the facts. Both Attorney Spak and Deputy Commissioner Kerrigan testified at this hearing. There was no testimony from Attorney Spak that she was in any way adversely influenced by the defendant Gentile as against the plaintiffs. Deputy Commissioner Kerrigan also testified at the hearing and there was no testimony that he was in any way adversely influenced by Gentile. In fact, Mr. Kerrigan said that even if he knew of the Gentile and Medstar relationship as he now knows it, prior to the time he approved the decision in this matter, it would not have influenced him to in any way alter that decision.
The plaintiffs also claim that the actions of Gentile and the Medstar defendants constituted a CUTPA violation and that they are entitled to damages whether Attorney Spak was influenced or not. There is a question whether Gentile and the Medstar defendants were engaged in Trade or Commerce as defined by Section 42-110a — (4) and whether the actions of Gentile, as Director of OEMS, are exempt from CUTPA under 42-110c(a)(1), Connelly v. Housing Authority, 213 Conn. 354, 360. Furthermore, there was no evidence presented which would demonstrate this dispute to be anything more than a purely private one and hence, not actionable under CUTPA. Ivey Barnum O'Mara v. Indian Harbor Properties, Inc., 190 Conn. 528,540. In any event, the plaintiffs claim an ascertainable loss and therefore, under 42-110g(a), it must show that the wrong caused their loss. As stated above, the court will not draw any inference nor is there any evidence that the actions of Gentile and the Medstar defendants influenced Attorney Spak, or the Deputy Commissioner which resulted in the plaintiffs' alleged loss.
The court, in weighing the evidence, finds that the CT Page 1892 plaintiffs have not established probable cause that they will prevail, and therefore, will deny its application for a prejudgment remedy. Gibbs v. Mase, 11 Conn. App. 289, 295.
/s/ Pellegrino, J. PELLEGRINO