[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
I.
 Facts
The plaintiffs, Louis Brunette ("Brunette"); and Guy Brunette, Louis Brunette Jr. and Susan Gaffney (the "Brunette children") initiated this action alleging fraud, misrepresentation and unfair trade practices against several defendants. The plaintiffs assert that these defendants, either as primary wrongdoers or as aiders and abettors, fraudulently induced them to invest in a number of financially unstable partnerships and corporations, all to the detriment of the plaintiffs.
The primary defendants are Michael D'Addabbo and Terry Fletcher, former partners of Brunette. The gravamen of the plaintiffs' allegations in the third amended complaint is that D'Addabbo and Fletcher fraudulently exaggerated the financial condition of their most prominent limited partnership, Ponce De Leon Building Associates ("Ponce"), thereby inducing the plaintiffs to continue to fund these joint ventures with cash and to pledge additional personal security.[1]
The allegations against the defendant Luppi, Mahon 
Simmons ("Luppi"), an accounting firm, are contained in Counts One, Three and Twelve of the third amended complaint. Luppi was hired by Fletcher and D'Addabbo to audit the Ponce Partnership and to prepare financial statements for the fiscal years 1984 through 1989.
The plaintiffs assert that Luppi is liable as an aider and abettor of Fletcher's and D'Addabbo's alleged fraud because it "failed to comply with generally accepted accounting principles" in preparing the financial statements for the Ponce CT Page 8510 Partnership, thereby failing to "disclose the true condition of the Ponce Partnership. " (Count One). Plaintiffs further allege that "as the accountant for the Ponce Partnership, it knew of Fletcher's and D'Addabbo's misappropriation of funds." (Count Three). Finally, in Count Twelve, the plaintiffs allege that the accounting firm's conduct constituted an unfair trade practice pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110g.
The defendant Luppi now moves for summary judgment as to Counts One, Three and Twelve.
 II. Discussion
 A.
The test for determining whether or not to grant a summary judgment motion "is whether a party would be entitled to a directed verdict on the same facts." Connell v. HousingAuthority, 213 Conn. 354, 364 (1990). "[A] directed verdict will be granted only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 380 (1969).
A motion for summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Connell v. Colwell, 214 Conn. 242, 246 (1990). "[T]he function of the trial court is only to determine whether there is a genuine issue as to any material fact, but not to decide that issue if it does exist until the parties are afforded a full hearing. Issue finding, rather than issue determination, is the key to the procedure." Yanow v. Teal Industries, Inc.178 Conn. 262, 276 (1979).
The defendant raises three grounds in support of its motion for summary judgment. First, the defendant argues that aiding and abetting a common law fraud is not a cognizable claim in Connecticut. Second, the defendant argues that "jurisdictions which recognize such a claim require proof of `scienter' CT Page 8511 and `substantial assistance', critical elements of the claim that cannot be established in the undisputed facts of this case." Finally, as to the CUTPA claim, the defendant argues that the lack of causal connection between the defendant's alleged unfair trade practice and the plaintiffs' damages is fatal to this claim. Each of these arguments will be addressed in turn.
1.
The defendants' first argument is that aiding and abetting fraud is not a valid cause of action. Although our appellate courts have not, as of yet, had the opportunity to consider this issue, this court notes that other states, as well as scholarly commentators, do recognize aiding and abetting fraud as a cause of action. See Restatement (Second) of Torts, § 876(b).[2]
Recently, Judge Leheny addressed a similar situation inFDIC v. Romaniello, 8 Conn. L. Rptr. 30 (December 1, 1992), in which she denied a motion to strike holding that the plaintiff had stated a claim against the defendant accountant for aiding and abetting the fraudulent actions of a co-defendant. While noting that this cause of action had not previously been recognized in Connecticut, she was persuaded by the reasoning of decisions in other jurisdictions allowing the claim. SeeHalberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983).
This court is similarly persuaded and concurs that the elements of this cause of action are as identified inRomaniello:
 (1) the party whom the defendant aids must perform a wrongful act that causes an injury;[3]
 (2) the defendant must be generally aware of [its] role as part of an overall illegal or tortious activity at the time [it] provides the assistance;
 (3) the defendant must knowingly and substantially assist the principal violation.
FDIC v. Romaniello, supra, 31, quoting Halberstam v. Welch, supra. CT Page 8512
2.
The defendant maintains that, even if the plaintiff has stated a cause of action for aiding and abetting common law fraud, it is nonetheless entitled to summary judgment. The defendant argues that the facts alleged by the plaintiff, if proven, could not support this claim. Specifically, the defendant argues that the plaintiffs cannot establish the required scienter on the part of Luppi to meet the requirements of the second element of the tort of aiding and abetting, and that the plaintiffs cannot establish that Luppi "substantially assisted" the primary defendant, the third element of the tort.
 a.
The defendant argues that to establish the second element of the tort ("scienter"), "plaintiff must prove that Luppi either knew about the alleged fraud by Fletcher and D'Addabbo or that it was reckless in not knowing of such fraud when it prepared the Ponce financial statements." This court will limit its consideration to a determination of whether, when viewing the evidence in the light most favorable to the plaintiff, a material issue of fact exists concerning whether Luppi was reckless in the preparation of the financial statements.[4]
The plaintiffs' allegations against Luppi in Count One are as follows:
 Luppi, Mahon is liable to the plaintiffs as an aider and abettor of Fletcher and D'Addabbo in that it prepared financial statements which failed to comply with generally accepted accounting principles and which failed to disclose the true condition of the Ponce Partnership and the Ponce Building. In particular, the financial statements prepared by Luppi, Mahon failed to include the appropriate "going concern" qualification. Luppi, Mahon knew and reasonably could have foreseen that a third party would rely on the financial statements for a determination of the Ponce Partnership and the Ponce Building's financial condition. CT Page 8513
The plaintiffs further allege in Count Three that as the accountant for the Ponce Partnership, Luppi knew of Fletcher's and D'Addabbo's misappropriation of funds.
To buttress these allegations, the plaintiffs have submitted the affidavit of Robert Gerardi, a certified public accountant. Gerardi attests that in his professional opinion, Luppi's report omitted a "going concern" qualification which is required by generally accepted accounting principles ("GAAP").[5]
Whether or not the plaintiffs' allegations concerning wrongful conduct on the part of Luppi, if proven, constitute mere negligence or are more properly characterized as willful blindness so as to give rise to a finding of recklessness are questions that are appropriately left to be determined by the trier of fact. Summary judgment "is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of notice, intent and subjective feelings and reactions." Batick v. Seymour, 186 Conn. 632, 646-47 (1982). In this court's view, it would be equally inappropriate in the present case where an issue exists concerning whether or not the scienter requirement was met.[6]
 b.
The defendant's final argument is that the plaintiffs cannot establish that Luppi "substantially assisted" Fletcher and D'Addabbo. The "substantial assistance" element requires plaintiffs to "make some factual showing that the assistance provided by the alleged aider and abettor was a substantial factor in bringing about the violation." Mendelsohn v. CapitalUnderwriters, Inc., 490 F. Sup. 1069, 1084 (N.D. Cal. 1979).
The Restatement suggests several factors to be considered in determining when the assistance is substantial: (1) the amount of assistance given by the defendant; (2) his presence or absence at the time of the tort; (3) his relation to the plaintiff; and (4) his state of mind. Restatement (Second) of Torts, § 876, Comment b; Halberstam v. Welch, supra, 478.
The defendant argues that there is no genuine issue of fact concerning whether its conduct facilitated the alleged fraud by Fletcher and D'Addabbo. The defendant points to the deposition testimony of Brunette as evidencing the absence CT Page 8514 of any factual disputes regarding this issue. The defendant claims that Brunette admits in his deposition testimony that he relied solely on the oral representations of Fletcher and D'Addabbo in making his decision to invest in the Ponce Partnership, and not on the Ponce financial statements. A review of Brunette's deposition testimony appears to support this contention.[7]
In response, the plaintiffs contend that "the absence of a "going concern" qualification in the accountant's report unquestionably assisted Fletcher and D'Addabbo because the plaintiffs were not warned of the precarious condition of the Ponce Partnership, and Fletcher and D'Addabbo had additional time to conceal their fraud." However, it is indisputable that the absence of the "going concern" statement would only facilitate the alleged fraud if the plaintiffs relied on its absence in making their investment decisions.
The plaintiffs point to additional deposition testimony of Brunette, along with his sworn affidavit, as indicia of his reliance on the accountant's report. In his deposition, Brunette testified that when he received the financial statements, he "would look at the cover letter and see to indicate whether I was advised if there was any problems with the company." In his affidavit, Brunette further explains this assertion by attesting that it has been his practice to look for a statement indicating whether the entity is experiencing financial difficulties and what steps are being taken to correct them.[8]
The probative value of this, albeit weak, and seemingly contradictory to earlier deposition testimony, is best resolved by the fact finder, and not on a motion for summary judgment. See Lagana v. Lastrina, 9 Conn. L. Rptr. 178 (May 27, 1993, Arena, J.) (deposition testimony does not constitute a judicial admission, can be contradicted at trial, and therefore is not conclusive on an issue).
3.
The final issue for this court to resolve is whether there are any facts in dispute with respect to whether or not the defendant's alleged conduct may constitute a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110g. The defendant argues that the CUTPA claim CT Page 8515 fails because there is no causal connection between its alleged misconduct and the plaintiffs' losses.
The defendant's argument that the plaintiff cannot prove a CUTPA violation is, in essence, identical to its argument that it did not "substantially assist" in the alleged fraud of Fletcher and D'Addabbo. This being the only ground raised in support of its motion for summary judgment as to Count Twelve of the plaintiffs' complaint, the motion is denied for the reasons articulated earlier in this decision.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT