[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The above-captioned case comes before this court on the defendants' motion to strike the plaintiffs' claims under the Connecticut Antitrust Act and under the Connecticut Unfair Trade Practices Act ("CUTPA").
The procedural background of the case is as follows. In May 1996, the plaintiffs Automated Salvage Transport, Inc., Bria Rubbish and Recycling, Inc., Connecticut Carting Salvage Corp., Connecticut Disposal Service, Inc., D.P.L. Refuse Service, Inc., Frank Perrotti Sons, Inc.; Royal Refuse and Recycling, Inc., Sanitary Refuse Co., Inc., Quality Recycling and Disposal, Inc., CT Page 7797 and C B Sanitation Recycling, LLC, brought suit in United States District Court for the District of Connecticut against Wheelabrator Environmental Systems, Inc., ("Wheelabrator") Bridgeport RESCO Company, L.P.; Riley Energy Systems of Lisbon Corporation; Energy Systems of Lisbon Corporation (collectively, the "private defendants"); and Connecticut Resources Recovery Authority ("CRRA") alleging that an agreement between CRRA and the other defendants violated the Sherman Act, 15 U.S.C. § 1,2, 3 and 15 and other federal statutes. In their complaint, the plaintiffs also alleged violation of the Connecticut Antitrust Act, General Statutes §§ 35-28 and 35-29, and CUTPA.
In the federal suit, the plaintiffs, which are engaged in the business of collecting and recycling refuse, including substantial volumes of municipal waste, alleged that CRRA had sued Wheelabrator and that in order to settle that suit, Wheelabrator entered into a settlement agreement that "further tightened the grip of [CRRA's] virtual monopoly on the collection and/or disposal of waste."
The federal claims were dismissed by the court, Burns, J., on August 30, 1996. Having dismissed the federal claims, Judge Burns declined to exercise jurisdiction on the state claims, that is, the claims of violation of the state antitrust act and of CUTPA.
Upon the dismissal of the federal suit, the plaintiffs filed this suit, which they served on the defendants on August 29, 1996. The plaintiffs had filed a motion for a temporary injunction to enjoin the defendants from, inter alia, enforcing the settlement agreement or otherwise refusing to accept any and all waste from the plaintiffs.
Defendant CRRA filed a brief opposing the motion for a temporary injunction. The private defendants did the same and also filed a motion to strike the complaint. CRRA orally joined in that motion at oral argument on the motion to strike on September 23, 1996.
On the same day that the parties presented oral argument on the motion to strike, the plaintiff filed an amended complaint. The parties agreed on the record that since the counts addressed in the motion to strike the original complaint are also contained in the amended complaint, the court's adjudication of motion to strike will apply to the state antitrust and CUTPA claims in both the original and the amended complaints. CT Page 7798
At the time CRRA filed its brief, a motion for reconsideration of the dismissal was, pending in federal court. Subsequently, judgment has entered in that case, in effect denying the motion for reconsideration and removing any issue about prior pending litigation involving the claims now before this court.
The defendants did not file any requests to revise the complaint, and by asking the court to adjudicate the motion to strike as to the amended complaint as well, they have waived their right to file a request to revise that complaint pursuant to P.B. §§ 112, 113.
Standard of Review
The function of a motion to strike is to test the legal sufficiency of the pleading. Practice Book § 152; Ferryman v.Groton, 212 Conn. 138, 142 (1989). A motion to strike admits all facts well pleaded; Cyr v. Brookfield, 153 Conn. 261, 263 (1965); and the allegations of the complaint are to be given the same favorable construction that the court would be required to give them in admitting evidence under them. Ferryman v. Groton,212 Conn. 138, 142. The complaint must be construed in the manner most favorable to sustaining its legal sufficiency. Sassone v.Lepore, 226 Conn. 773, 780 (1993); Michaud v. Wawruck,209 Conn. 407, 408 (1988).
Recently, in Bohan v. Last, 236 Conn. 670, 675 (1996), the Supreme Court indicated that where the facts alleged in the complaint are "sparse" but state conclusory material that would constitute a cause of action if eventually supported by facts, a motion to strike should not be granted.
While the movants have attached documents to their motion and have referred to facts beyond those stated in their complaint, this court recognizes that a motion to strike is to be tested on the basis of the law applicable to the allegations of the pleading to which it is addressed, not on the basis of any factual consideration not alleged in the challenged pleading.Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,549-50 (1980); Blanchard v. Nichols, 135 Conn. 391, 392
(1949). Accordingly, the court will not rely in any way on facts not alleged in the complaint. CT Page 7799
State Antitrust Claim
In Count One of their complaint, the plaintiffs claim that the defendants are violating the state antitrust statute, General Statutes §§ 35-28 and 38-29. They allege that CRRA, which they allege to be "a public instrumentality of the State of Connecticut" (Complaint, para. 3), was created by the General Assembly to provide services and facilities for solid waste management at reasonable costs in a manner protective of the environment. They allege that CRRA "virtually eliminated every available solid waste disposal site in the State of Connecticut in favor of trash-to-energy plants" (Complaint, para. 5) and that CRRA operates or controls four of the six such plants.
The defendants assert that the action of CRRA are exempt from the state antitrust act pursuant to General Statutes § 35-31
(B), which provides as follows:
 Nothing in this chapter shall apply to those activities of any person when said activity is specifically directed or required by a statute of this state, or of the United States.
The plaintiffs allege that the defendants have
 "developed and maintained a vast system of solid waste management projects, under a Solid Waste Management Plan, which includes waste-to-energy plants and transfer stations. This plan has abandoned landfilling in favor of transporting waste via transfer stations or directly to trash-to-energy plants for ultimate disposal. By doing so, this plant has virtually eliminated every available solid waste disposal site in Connecticut in favor of trash-to-energy plants. Complaint, para. 5.
The conduct that the plaintiffs actually allege to constitute an antitrust violation is the entry of CRRA and the private defendants into an agreement that specifies how the private defendants are to operate a trash-to-energy plant at Lisbon, Connecticut. The plaintiffs allege that this agreement was entered into on July 19, 1995. They have not set forth or incorporated its provisions in the pleadings but have merely alleged in a conclusory manner that the agreement furthers a monopolistic restraint of trade. The full text of the paragraphs of the complaint which describe the conduct claimed to violate the state antitrust act is as follows: CT Page 7800
 8. Before the sixth trash-to-energy plant at Lisbon owned and/or controlled by the Wheelabrator defendants became operational, CRRA sued the Wheelabrator defendants to prevent the operational permitting of this facility in an attempt to retain its virtual monopoly over waste incineration and disposal in the State of Connecticut. Faced with an injunction and the prospects of a several-year court battle over its existing but not operationally permitted Lisbon facility, the Wheelabrator defendants conspired with CRRA and entered into a settlement agreement dated July 19, 1995, which further tightened the grip of its virtual monopoly on the collection and/or disposal of waste.
 9. Beginning on or about July 19, 1995, defendants have engaged in an unlawful contract, combination and conspiracy to restrain the trade and commerce of waste, monopolize or attempt to monopolize such trade and commerce, divide the market place, and refuse to deal or to deal only on certain terms with plaintiffs.
 10. The aforesaid contract, combination and conspiracy has consisted of a continuing agreement, understanding and concert of action in the guise of the settlement agreement dated July 19, 1995 for the purpose of restraining trade and commerce, monopolizing or attempting to monopolize such trade or commerce, divide the marketplace, and refuse to deal or to deal on certain terms.
 11. The effects of the aforesaid conduct have been, among others, to:
 (a) stabilize and maintain waste disposal prices at artificially high levels;
 (b) create disincentives to the most efficient and economical locations for waste disposal;
 (c) discourage the use of the cheapest and most efficient mode of transportation;'
(d) discriminate in prices between customers;
 (e) restrict or eliminate the availability of disposal sites and create a virtual monopoly; CT Page 7801
 (f) restrict or eliminate competition in the collection of waste;
(g) unfairly compete;
 (h) unreasonably restrain free trade and interstate commerce, and
 (i) mislead and deceive the public with respect to waste disposal.
The text of the statutory exemption on which the defendants have based their motion to strike indicates that the scope of the exemption is not all activity of a public entity but only activity that is "specifically directed or required by a statute of this state, or of the United States."
At the outset, the court is faced with the situation that the pleading that is challenged does not actually state what the terms of the settlement agreement were; rather the plaintiffs have pleaded only that an agreement was reached and that it has an effect violative of the antitrust statute.
The vagueness of this pleading precludes this court from determining whether the agreement complained of is "an activity specifically directed or required by a statute of this state." Had the contents of the agreement been set forth, the court would potentially have been able to determine whether the achievement of those terms was required by the statutes by which CRRA was created and the scope of its required activities was defined. Without the text, this court cannot make either the factual determination of what the activity" was or the legal determination whether it was "specifically directed or required" by a state statute. As the Connecticut Supreme Court noted inMazzola v. Southern New England Telephone Company, 169 Conn. 344,366 (1975) a finding that challenged activities are among those authorized by law would not necessarily mean that the activities were "specifically directed or required" by state statute, so it is not enough that the agreement was entered into by a statutorily-created entity.
Since the complaint does not specify precisely the activity that it claims constitutes an anti-trust violation, the movants, who did not file a request to revise to obtain a statement in the CT Page 7802 complaint as to just what the activity at issue is, have failed to establish that as a matter of law the exemption on which they rely is applicable to that unspecified activity.
CUTPA Claim
The defendants have also moved to strike the plaintiffs' claim of violation of the Connecticut Unfair Trade Practices Act, "CUTPA." The CUTPA claim, which is the second court of the verified complaint, rests wholly on the factual allegations of the first count and characterizes those acts as unfair or deceptive acts or practices violative of General Statutes §42-110b. The motion to strike this claim is based in part on the argument that the only unfairness or illegality alleged is a violation of the state antitrust act and that since that statute does not apply, no CUTPA violation can be established. The movants assert as a separate ground in support of their motion to strike a provision CUTPA which they claim exempts the actions of state agencies from that statute's coverage. The exception invoked by the defendants is General Statutes § 42-110c, which provides that "[n]othing in this chapter shall apply to (1) transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States." This exemption is broader than the exemption in the state antitrust act since it does not require that the activity at issue be "specifically directed" or "required" but only that the actions be permitted and be subject to regulation by a regulatory board or officer.
The defendants interpret § 42-110c to apply not only to particular transactions regulated by public boards or officials but to all actions of such boards or public officials, such that the CRRA as an entity is not liable under CUTPA. On its face the exemption does not appear to apply so broadly; indeed, when the Connecticut Superior Court applied the exemption in Connelly v.Housing Authority, 213 Conn. 354, 361 (1990) its analysis tracked the words of the exemption. First, the Court considered whether renting housing units was a "transaction or action permitted under law;" then it considered whether those actions were regulated by other governmental bodies. Finding that the defendant housing authority was "pervasively regulated by both the state department of housing at HUD", the Court ruled that the exemption set forth in § 42-110c applied, Connelly v. HousingAuthority, 313 Conn. 361. CT Page 7803
The Court discussed extensively in Connelly, at 213 Conn. 316-62, the fact that the practices of housing authorities were regulated by outside agencies. The Court did not simply find that governmental agencies are exempt, as the defendants suggest. Significantly, in Normand Josef Enterprises, Inc. v. ConnecticutNational Bank, 230 Conn. 486, 518 (1994), the Supreme Court noted that the statutory exemption was found to apply in Connelly
because the housing authority had express authorization to rent apartments and did not simply advert to its status as a statutorily created entity.
In the case before this court, the transaction or action is the agreement between CRRA and the other defendants concerning the operation of waste disposal facilities. The statutes which created and govern the operation of CRRA establish an exemption for such transaction. General Statutes § 22a-264 provides that activities of CRRA "shall be in conformity with applicable statutes and regulations and with the solid waste management plan as promulgated by the commissioner of environmental protection." The same statute requires annual review by the commissioner of environmental protection of CRRA's annual plan of operation.
The statutes cited above lead this court to the legal conclusion that the exemption set forth in § 42-110c applies, since the CRRA is authorized to contract with entities such as the private defendants as part of its plan of operation and since CRRA's plan of operation is administered by the commissioner of environmental protection.
While CRRA is exempt from CUTPA liability pursuant to § 42a-110c, it is a separate issue whether the other defendants are exempt. The text of § 42-110c indicates that the exemption applies not according to the identity of the party but rather to the transaction itself: "[n]othing in this chapter shall apply to (1) transactions or other actions otherwise permitted under law as administered." As has been detailed above, contracts between members of the private sector and CRRA are statutorily authorized, and the plan of operations of which such contracts are a part is by law administered by the commissioner of environmental protection. Since the transaction at issue is exempt by the terms of § 42a-110c, no party to that transaction is subject to CUTPA liability. Since the claimed basis of CUTPA liability asserted against the private defendants is that they entered into and acted pursuant to agreements made CT Page 7804 with CRRA, a finding that the exemption applies means that the motion to strike claims based on the agreement must be granted.
Conclusion
For the foregoing reasons, the motion to strike is denied as to Count One an granted as to Count Two as to all defendants.
Beverly J. Hodgson Judge of the Superior Court