### ROBERT PECK *against* ISAAC LOCKWOOD.

The right to take shell-fish on the land of an individual, between high and low-water mark, is a common right.

THIS was an action of trespass, *quare clausum fregit.*

The declaration stated, that the defendant entered upon the plaintiff's land, dug up the soil, and destroyed the sedge, herbage, &c. growing thereon, and took therefrom great quantities of oysters, clams, and other shell-fish.

The land described in the declaration, consisted of a tract of upland, and about seven acres of sedge flats contiguous thereto, which were overflowed at high water, but which were above low-water mark, so as to be entirely overgrown with sedge.

On the trial of the cause, it appeared that the defendant, at the time mentioned in the declaration, entered upon such flats, at a place where clams are usually taken, for the purpose of digging clams, and dug and carried away about half a bushel ; in doing which he necessarily dug up a part of the sedge there growing, after having been expressly forbidden by the plaintiff.

The plaintiff, in proof of his title to the land mentioned in the declaration, exhibited two deeds ; one executed to him, in 1784, by *Jabez Ferris*, and the other in 1789, by *Titus* and *Charles Knapp.* The description of the land conveyed by the first deed, being a part only of the premises, is in the following words, *viz.* " bounded east by *Timothy Knapp's* land, south by the water, west by said *Peck's* own land, north by *Joseph Sacket's* land." The description in the second deed is in these words, *viz.* " bounded north by the *Reed's* meadow, so called, easterly and southerly by the cove, so called, and westerly by said *Peck's* land, in part, and partly by *Sacket's* land."

It was admitted that the grantors of the plaintiff owned all the land included in these deeds ; but it was contended, on the part of the defendant, that the words " southerly by the water," in the first deed, and the words " easterly and southerly by the cove," in the second, could not legally be so

construed as to include the sedge flats. The plaintiff also proved that he, and those under whom he claimed, had, for more than forty years before the bringing of the suit, annually, and exclusively of all others, cut and taken off the sedge growing on such flats. To rebut the presumption arising from this fact, of a title in the plaintiff, by possession, and to establish the right of the defendant to take the clams in question, the defendant proved, that the inhabitants of the town of *Greenwich,* and other places, had without molestation, from the first settlement of the country, at proper seasons, entered upon such sedge flats, and dug and carried away the shell-fish, and had also removed so much of the sedge as was necessary for the purpose of taking such shell-fish.

The plaintiff then offered to prove, that such persons, in going to the flats before mentioned, and other parts of the sea-coast, for the purpose of taking shell-fish, proceeded either by water, or upon the land mentioned in the declaration, and other lands of the plaintiff, and of other persons. This evidence was rejected by the court as immaterial ; it being agreed, that the defendant was not guilty of any other trespass, than by digging the clams in question, in the manner above stated.

This case was reserved for the advice of the nine judges.

The question whether the evidence offered by the plaintiff was properly rejected, was also reserved.

*Daggett* and *Sherman,* in behalf of the plaintiff, contended,

1. That the possession of the plaintiff, and those under whom he claimed, vested in him an exclusive right to the use and occupation of the land, where the supposed trespass was committed.

2. That the deeds under which he also claimed conveyed to him the fee of all the land above low-water mark. 1 *Swift's Syst.* 343. *Adgate* v. *Stores,* 2 *Root,* 160. *Ward* v. *Creswell, Willes,* 265, 268. *Sir Henry Constable's* case ; 5 *Co.* 107, 108.

*N. Smith* and *Denison,* for the defendant, contended,

1. That the plaintiff derived no exclusive title by deed to the place where the alleged trespass was committed.

2. That he had no right, by prescription, to the exclusive occupation of the soil.

3. That the public, at common law, possessed the right of fishery at the place in question. *Harg. Law Tracts,* 11, 12, 13. *Warren* v. *Matthews,* 6 *Mod.* 73. S. C. 1 *Salk.* 357. *Evans'* note. *Ward* v. *Creswell, Willes,* 265. Lord *Fitzwalter's* case, 1 *Mod.* 105, 106. *Carter et al.* v. *Murcot et al.* 4 *Burr.* 2162. *King* v. *Smith, et al. Doug.* 441. *The Mayor and Commonalty of Orford* v. *Richardson et al.* in the King's Bench, 4 *Term Rep.* 437. and in Error in the Exchequer Chamber, 2 *H. Black.* 182. *Bagott* v. *Orr,* 2 *Bos.* & *Pul.* 472. *Carson* v. *Blazer et al.* 2 *Binn.* 475. *Ball* v. *Herbert,* 3 *Term Rep.* 253. 6 *Com. Dig.* 55. (D. 50.)

REEVE, J. This is an action of trespass for entering upon the plaintiff's land, and digging up his soil, destroying his sedge grass, and taking away a quantity of clams, oysters, and other shell-fish.

The defendant claimed a right to enter on the said lands, to take clams; that it had been customary for the inhabitants of the town, and other places adjacent, from the first settlement of the country, to take clams from this place without molestation, being sedge flats, which are covered at high water, but are above low-water mark. On these flats the defendant entered, and committed no other trespass than what arose from entering and digging up as much sedge as was necessary to take the clams, and no more. The defendant denies, indeed, that the place in question was covered by the plaintiff's deeds, as set forth in the case stated. I shall lay this question out of the case, by only observing, that I entertain no doubt but that the said flats are included in the plaintiff's deed, so as to convey to him the right of soil. But, however that is, by the state of the case it appears that it has been, for more than forty years, in the exclusive possession of the plaintiff, and those under whom he

claims, except so far as that possession may be supposed to be interrupted, by the entry of people thereon, to take shell-fish, as before stated. This entry is not adverse to the plaintiff's title to the soil. It is not made with a view to affect such title. It is made only under a claim to fish, and not to occupy for any other purpose. It is a claim in perfect consistency with the plaintiff's title to the soil; and by forty years' possession, unmolested, by the laws of this state, he must have acquired a title, equally valid with a conveyance from the owner by deed. The flats, therefore, are the plaintiff's estate in fee, and the question is this, _viz._ has the defendant a right to enter thereon, for the purpose of taking clams?

It appears, from the state of the case reserved, that the plaintiff offered to prove that, in going to the said flats, for the purpose of taking clams, persons went either by water, or on or over the lands in the declaration mentioned, and other inclosures of the plaintiff, and of other persons. But such evidence was rejected by the court. I am of opinion that it was properly rejected; for it is not stated in the declaration that any trespass was committed by the defendant, except entering on the land described in the declaration. Whether the defendant might go across other inclosures of the plaintiff, for the purpose of getting to the flats, is not a question before the court. It is not even stated, that the defendant was one of those people who went upon other inclosures of the plaintiff.

The only question, which remains, is this: Is the right of fishing for shell-fish, where the ground must be dug to take them, on land which is covered with water at high-water mark, but which is above low-water mark, or, in other words, on lands over which the tide flows, and from which it ebbs, a public right, which may be exercised by every citizen; or is it a right which belongs exclusively to the proprietor of such land? If the former, judgment must be for the defendant; if the latter, judgment must be for the plaintiff. To settle this question, we are not to resort to any train of reasoning as to what is most or least reasonable. We are not,

as in many cases of doubt, to infer what the law is, from the probable good or ill consequences, which may follow, from establishing one or the other system. It is a question which it is peculiarly the province of the maxim *ita lex scripta est*, to determine.

I would here observe, that I do not contend, that the proprietor of such land cannot acquire an exclusive right to fish thereon. I admit it. I think this is clearly established by authorities.

As it respects the various methods in which such a right may be acquired, in *England* and in this country, I have nothing to observe. The only question stated on the record is, does such a right result to the proprietor, by virtue of his ownership of the soil? If no such right results to him by the common law, as I shall attempt to prove from the authorities, it behoves him to shew that he has gained such right. The presumption is against him; and he must remove this out of the way, before he can avail himself of such an exclusive right.

The law of *England*, in this case, must with great propriety be deemed our law; for our ancestors came from that country, bringing with them the legal notions which there prevailed; which have ever been considered the common law of this country, unless altered by our own legislative acts, or so manifestly improper to be received, arising from widely differing local circumstances, that our courts have been obliged to reject them, to attain the ends of justice, for which all laws are made. But in a case where the reason is the same, and as strong in this country as that, and of equal applicability to our circumstances as theirs, the law is the same. In relation to the present subject, there is no statute altering the common law; there is no reason for the existence of such a law in that country, which does not apply with equal force in this; and nothing in our local circumstances, which militates against the adoption of it by us. The usage stated in the case I make no use of, except that it furnishes evidence that our ancestors always supposed that they had a right to fish and take clams on such lands as these, the

subject of this controversy.   Such notions by them adopted,

I think, will appear to have been uniformly the law of that
country from which they came.

In lord *Fitzwalter's* case, reported in 1 *Mod.* 105. and in
8 *Keb.* 242. we find it laid down by chief justice *Hale*, that
in case of a river which flows and reflows, and is an arm of
the sea, the right of fishing is common to all, and that, in an
action of trespass brought for fishing there, it is a good justi-
fication to say, that the *locus in quo* is an arm of the sea.   It
is clear that by this is meant, *when the proprietor of the soil
brings the action of trespass ;* for no other person could bring
trespass but the proprietor, or some person having a possession
under him ; and that the case before the court was by the
proprietor, is manifest from the observation of lord *Hale,* who
says there is no contradiction between the soil being in one,
and yet the river common for all fishers.   From this case we
learn, that the right of fishing in such place where there is a
flux and reflux of the sea, is a right common to every citizen,
although the soil be the estate of a particular person.

The doctrine here laid down is every where recognized to
be correct.   We find the general rule established in *Warren* v.
*Matthews,* reported in 1 *Salk.* 357. and in 6 *Mod.* 73. and in
*Carter et al.* v. *Murcot et al.* 4 *Burr.* 2162.   In the last case,
it was laid down by lord *Mansfield,* that a man may have an
exclusive privilege of fishing in an arm of the sea ; but such
right is not to be presumed ; it must be proved : and Mr.
Justice *Yates* observes, that he knew a case to fail, wherein
this claim was made, because such prescriptive right could
not be proved ; and in that case it was determined, that a
right of fishing in such place was common to all.

The case of *The Mayor and Commonalty of Orford* v.
*Richardson et al.* in the King's Bench, 4 *Term Rep.* 437. and
in Error in the Exchequer Chamber, 2 *H. Black.* 182. was
determined wholly upon the ground, that every subject, *prima
facie,* has a right to fish in an arm of the sea; yet an appro-
priate right may be proved in another, which will give him
the exclusive privilege of fishing there.   No person can read
and understand the pleadings in that case, without per-
ceiving that the beforementioned doctrine was admitted by

the whole court, and all the counsel, to be correct. We have an authority to this point, in *Com. Dig.* 55. His words are, " Every one may fish in the sea, of common right, though it flows on the soil of another." He cites the case of *Warren v. Matthews,* 6 *Mod.* 73.

The foregoing authorities abundantly prove the general proposition, that the right of fishing on the soil of another, when overflowed with the tide from the sea, or arm of the sea, is a common right. The only doubt that can arise, in cases of this kind, is, whether there is a common right of fishing for shell-fish, after the reflux of the tide ?

Although this right is nowhere denied by any authority, and as the principle is certainly included in the general proposition, that on such lands the right of fishing is common to every subject ; yet, I think, some reasonable doubt might have been entertained on this subject, if no further authority could have been produced. The case of *Bagott v. Orr,* 2 *Bos. & Pul.* 472. is, I apprehend, a case in point. It was the very case of entering upon land of the plaintiff, and taking shell-fish, by digging up the earth betwixt high and low-water mark ; which could be done only after the reflux of the sea. This case was determined in favour of the defendant, on the ground that such fishery, in such a place, which is the very case before the court, was a matter of common right. The court, in delivering their opinion, say, that if the plaintiff had it in his power to abridge the common-law right of the subject to take sea-fish (meaning in that case shell-fish, for that was the case before the court), he should have replied that matter specially ; and, that not having done so, the defendant must succeed upon his plea for taking the fish.

Here the court most expressly recognize the doctrine, that it is a right common to every subject, to enter upon the lands of the plaintiff, betwixt high and low-water mark, and to take from thence shell-fish, by digging up the soil.

In this opinion the other judges concurred, excepting

BRAINARD, J. who was absent from indisposition ; and

INGERSOLL, J. who had been of counsel in the cause.

Judgment to be entered for the defendant.