[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves the extent to which either the state, government or municipal government can limit the right to remove marine life from the water as established by Peck v. Lockwood, 5 Day 22 (1811); Lay v. King, 5 Day 72, 76 (1811); Delinks v. McCowan, 148 Conn. 641, 645 (1961). This right developed from English common law and affected her colonies. "It is . . . the common law right of all Her Majesty's subjects to fish and boat and bathe, in the open sea . . ." Falls v. Belfast and B. Ry. Co, 12 Ire. L.R. 233, 267.
 PROCEDURAL ISSUES
The matter was tried on the plaintiffs' October 20, 1992 amended complaint, which originally alleged seven counts against the defendants, Town of Westport and State of Connecticut, and their agencies and employees. The First Count claimed injunctive relief against all the defendants; the Second Count, CUTPA damages against the Town of Westport and Westport Shellfish Commission; the Third Count, money damages against the Connecticut Commissioner of Agriculture under 42 U.S.C. § 1983 et seq; the Fourth Count, money damages for due process violations against the Commissioner of Agriculture; the Fifth Count, money damages against the Town of Westport and Westport Shellfish Commission under42 U.S.C. § 1983 et seq; the Sixth Count, money damages against the Town of Westport and Westport Shellfish Commission for violation of plaintiffs' property and liberty interests; and the Seventh Count, money damages against the Town of Westport and Westport Shellfish Commission for their wilful, malicious, arbitrary, capricious and with strong hand actions. The Claims for Relief requested a number of forms of injunctive relief against all defendants, money damages, punitive damages, costs and attorney's fees under CUTPA, common law punitive damages and equitable relief.
Both defendants filed answers. The State of Connecticut and its agencies and employees filed a number of special defenses. The claims of all parties were tried over thirteen days to the court, Stodolink, J. Judgment was rendered and the plaintiffs appealed. The appeal was argued before the Supreme Court on September 21, 1994 and a decision was released on December 6, 1994. The judgment was affirmed in part and remanded for further proceedings. Frillici v. Westport, 231 Conn. 418
(1994). Thejudgment was affirmed as to the four counts in favor of the defendants, State of Connecticut, its agencies and employees. Thus, counts three, four, five and six were not subject to the remand order. The remand order only affected counts one, two, and seven. The only two defendants remaining as to those three counts are the Town of Westport and Westport Shellfish Commission. The answer filed by the Town of Westport and Westport Shellfish Commission to the October 20, 1992 amended complaint contained no special defenses or counterclaims. The CT Page 14094 pleadings were not amended after remand, Therefore, this matter was tried to this court on the First Count seeking multiple injunctive relief; the Second Count seeking CUTPA damages; and the Seventh Count seeking money damages for wilful and malicious conduct by the defendants, Town of Westport and Westport Shellfish Commission.
The five plaintiffs in the original trial remain the five plaintiffs in this trial. The individual named plaintiffs are Fernando Frillici, John Posh, and Melvin Hartman Jr., all residents of Connecticut who have clammed in the Cockenoe Flats area in the waters of the Town of Westport. The remaining plaintiffs are two Connecticut non-profit corporations, the Connecticut Saltwater Sportsmen's Protective Association, Inc. and the Fairfield County League of Sportsmen's Clubs, Inc. The members of these corporations are various sportsmen's organizations having an interest in fishing, clamming, hunting and a number of other such pursuits.
Trial counsel notified the court that the published remand orders are contained in the following referenced pages of Frillici v. Westport,
supra, 231 Conn. 418:
I. "We therefore remand the case to the trial court only for consideration of whether an injunction should issue and for a new trial on the plaintiffs' remaining claims for damages." Id. 436.
II. "The plaintiffs also claim damages from Westport and the Westport shellfish commission and for (1) alleged violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. (count two) and (2) conduct that was `wilful, malicious, arbitrary, capricious and with strong hand' (count seven). The trial court rendered judgment for the defendant on these counts based solely on its conclusion that Westport had jurisdiction of Cockenoe Flats and therefore was engaged in a rightful exercise of its regulatory authority. We remand these claims for consideration in light of our contrary holding on the jurisdictional issue." Id. 439-440.
III. "We also remand the case to the trial court for a final disposition as to the plaintiff's request for injunctive relief. In light of our holding on the jurisdictional issue, we would expect an injunction against enforcement of the Westport regulations to issue, unless the trial court determines that, the jurisdictional issue having been authoritatively settled, there is no need for an injunction. We also leave to the discretion of the trial court the plaintiffs' various claims for injunctive relief pertaining to the future exercise of jurisdiction over Cockenoe Flats and the plaintiffs' request for injunctive relief ordering the defendants: (1) to publish, at their expense, an article or CT Page 14095 notice to the public that no one who clams in the area is required to have a Westport permit; and (2) to refund all moneys received from the sale of clam permits except to those sold to people wishing to clam from Saugatuck Shores." Id. 440.
IV. "With respective counts one, two and seven, the judgment is reversed and the case remanded for further proceedings limited to consideration of the plaintiffs' claims (1) for injunctive relief under count one, (2) for damages for alleged CUTPA violations under count two, and (3) for damages under count seven. With respect to counts three, four, five and six, the judgment is affirmed." Id. 440
The original trial transcripts from the 1992 trial and the majority of its exhibits were offered into evidence at this trial. This court bifurcated any consideration of attorney's fees. The parties, in open court, stipulated as follows:
(1) The matter is submitted to the court based upon the pleadings as amended through October 20, 1992.
(2) The transcripts from the thirteen days of trial will be considered by this court in lieu of testimony.
(3) All exhibits offered before this court are all the exhibits that were previously submitted before Judge Stodolink and the missing exhibits are not relevant for this court's consideration.
(4) This court may consider those exhibits marked as full exhibits in this trial.
(5) The only further exhibits that will be considered are those exhibits marked for identification and this court can make a determination de novo as to which of those ten exhibits marked for identification will be marked as a full exhibit in this trial.
(6) No further exhibits, documents or witnesses will be offered by either party, except as to the bifurcated issue of the attorney's fees, if necessary.
(7) There are no other steps reasonably necessary to complete the proceedings.
(8) This trial court will render its decision based upon its own findings of fact and conclusions of law.
(9) A briefing schedule was established and new trial briefs are to be CT Page 14096 filed.
This court has read all the pleadings, transcripts and exhibits submitted This court has ruled that four exhibits, marked for identification, are full exhibits: Ex. 43, 55, 138 and 144. This court concludes that there are no further proceedings necessary and the matter may be completed without prejudice to the parties. The court declines to declare a mistrial or call any court witnesses. This court further concludes that no other steps are reasonably necessary to complete the proceedings. This memorandum of decision is based upon the court's own findings of fact and conclusions of law. Connecticut National Bank v.Giacomi, 242 Conn. 17, 23 n. 11 (1997); General Statutes §§ 51-183b,51-183c, 51-183f Stevens v. Hartford Accident Indemnity Co.,29 Conn. App. 378, 386 (1992); Sanchez v. Prestia, 29 Conn. App. 157, 161
(1992); Holcombe v. Holcombe, 22 Conn. App. 363, 365 (1990); State v.Douglas, 10 Conn. App. 103, 119 (1987); Barone v. O'Connell, Superior Court, judicial district of Fairfield at Bridgeport, Housing Session, Docket No. CVBR 9407-02447, (December 13, 1995, Tierney, J.) aff'd,43 Conn. App. 193 (1996).
 DISCUSSION OF LAW
Prior to the commencement of trial the remaining two defendants filed a Motion for Summary Judgment with this court's permission, seeking judgment in their favor as to the First Count for injunctive relief on the grounds of mootness and as to the Second Count for CUTPA relief; on the grounds that a municipality is exempt from CUTPA liability. In a decision rendered from the bench both requests were denied. In arguing its Motion for Summary Judgment, Westport claimed that there was no evidence that the Westport Shellfish Commission and/or the Town of Westport has sought to exercise any control over clamming in the area of Cockenoe Flats since the December 6, 1994 determination by the Supreme Court that the State of Connecticut, not the Town of Westport has jurisdiction over that area. This court's denial was based on the fact that part of the injunctive relief sought was the return of permit money and the publication of notice. Since there remains material issues of fact as to those items, the motion was denied.
Westport claimed that it is immune from CUTPA citing Connelly v.Housing Authority, 213 Conn. 354, 361-364 (1990). The defendants' motion was denied on the grounds that it remains a material issue of fact as to whether or not CUTPA can be applied to the Town of Westport and its Shellfish Commission in the maimer alleged in the complaint. This court rejected the claim that all municipalities and its agencies are exempt from CUTPA as a matter of law. CT Page 14097
The law of injunctive relief, as applied to municipalities, is well settled. It has been the long standing policy of Connecticut to grant injunctive relief infrequently. An injunctive remedy is extraordinary.Hine v. Stephens, 33 Conn. 497, 504 (1868). "An injunction is a harsh remedy." Leo Foundation v. Cabelus, 151 Conn. 655, 657 (1964). Injunctive relief is an unusual remedy that should not be granted except in extreme cases. Beck v. Board of Trustees, 32 Conn. Sup. 153, 157 (1975). Injunctive relief can be granted against municipalities. Bianco v.Darien, 157 Conn. 548, 150 (1969).
The requirements for injunctive relief as against municipalities are: there is no adequate remedy at law and the applicant will suffer an irreparable injury if the injunction is not granted. New London v.Perkins, 87 Conn. 229, 235 (1913). "Courts will act with extreme caution where the grating of injunctive relief will result in embarrassment to the operations of government." Wood v. Wilton, 156 Conn. 304, 310
(1968); Coombs v. Larson, 112 Conn. 236, 247 (1930). "When municipal authorities are acting within the limits of the formal powers conferred upon them and in due form of law, the right of the courts to supervise, review or restrain them is necessarily exceedingly limited. In part, this stems from the constitutional separation of the legislative, executive and judicial functions and powers." McAdam v. Sheldon, 153 Conn. 278, 281
(1965).
In the Second Count the plaintiffs seek attorney's fees, monetary relief and real punitive damages for CUTPA violations. The defendants argue that the Town of Westport and its agency, Westport Shellfish Commission, are exempt from CUTPA. In order to state a claim under CUTPA, the plaintiff must allege that the actions of the defendants were performed in the conduct of "trade or commerce." General Statutes §42-110b. Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 669 (1992). "Whether the defendant is subject to CUTPA is a question of law, not fact." Muniz v. Krais, 59 Conn. App. 704, 712 (2000). The Supreme Court has discussed the issue of municipal agencies being liable under CUTPA.Connelly v. Housing Authority, 213 Conn. 354 (1990) (CUTPA is applicable to failure of Housing Authority to comply with codes); City of Danburyv. Dana Investment Corp., 249 Conn. 1 (1999) (CUTPA does not apply to a municipality in foreclosing a tax lien). In addition, a number of trial courts have discussed the issue. The most recent case held that CUTPA does not apply to municipalities. Ippoliti v. Town of Ridgefield,
Superior Court, judicial district of Danbury at Danbury, Docket No. CV 99-0337600 S, (August 7, 2000, Moraghan, J.) (27 Conn. L.Rptr. 629) (6 Conn. Ops. 1077) (2000 Ct. Sup. 9553). Ippoliti refers to most of the trial court decisions discussing the issue by stating: "This court is in accord with the numerous Superior Court decisions which have held that CUTPA is inapplicable to the acts of a municipality." CT Page 14098
In addition to those cases cited by Judge Moraghan, this court references two decisions by Judge Bishop sitting as the presiding judge for Complex Civil Litigation in the Tolland, J.D. Charter CommunicationsEntertainment I, LLC v. The University of Connecticut, Superior Court, judicial district of Tolland, Complex Civil Litigation, Docket No. X07 CV00-0072038 S (March 23, 2000, Bishop, J.) (27 Conn.L.Rptr. 11) (6 Conn. Ops. 397) (2000 Ct. Sup. 3190) (The State of Connecticut is a "person" under CUTPA and the phrase "any other legal entity" in the definition section of General Statutes § 41-110 (3) could arguably include the state); Town of Manchester v. United Stone America, Inc.,
Superior Court, judicial district of Tolland, Complex Civil Litigation, Docket No. X07 CV 98-0070702 S (June 15, 2000, Bishop, J.) (27 Conn. L.Rptr. 414) (6 Conn. Ops. 863) (2000 Ct. Sup. 7283) ("The court is unpersuaded that Connelly stands for the broad proposition advanced by the plaintiff . . . Thus, while the court is unprepared to state that a municipality may never be subject to CUTPA. the court agrees with the plaintiff's contentions that the facts, as alleged in the pleadings in this case, do not implicate the remedial provisions of CUTPA.") After a careful review of Connelly, Dana and the trial court decisions, this court holds that there is no blanket immunity for municipalities from CUTPA and the factors of Connelly must be applied to find that a municipality is exempt. This court is constrained to make that finding since there is no direct Supreme or Appellate Court decision on point.
Connelly v. Housing Authority discussed certain factors used to determine if CUTPA applies to a municipality. Connelly held that the Housing Authority of the City of New Haven, a municipal agency, was exempt from CUTPA because it was: exempt by reason of regulation; it was not engaged in trade or commerce; and there were pre-emptive regulations under the Landlord/Tenant Act. The factors discussed in Connelly include the following: (1) The agency is a creature of statute and is expressly authorized and regulated by both the State and Federal government; (2) Both federal regulations and state law provide carefully balanced procedural and substantive remedies for tenants in a variety of situations; (3) Those regulatory remedies carefully balance the rights and obligations of the agency and its tenants, and this balance might by upset by providing a CUTPA remedy; and (4) There has been no instance in which the Federal Trade Commission Act has been applied to a local housing authority. Connelly does not make it clear that all of these factors are essential to this analysis. This court will apply theseConnelly factors in order to determine if CUTPA applies. The plaintiff seeks money damages, attorney fees, and real punitive damages by statute. General Statutes § 42-110g.
In the Seventh Count the plaintiff alleges: "The conduct of the CT Page 14099 Defendants, Town of Westport and Westport Shellfish Commission is and was wilful, malicious, arbitrary, capricious and with strong hand." The allegations of the Seventh Count incorporate all the paragraphs of the First Count seeking injunctive relief. By statute, CUTPA provides punitive damages in addition to attorney's fees. Common law punitive damages are limited to attorney's fees. By the Seventh Count, the plaintiff is claiming both monetary damages and common law punitive damages measured by attorney's fees. Triangle Sheet Metal Works v.Silver, 154 Conn. 116, 127 (1955). "Punitive damages, applying the rule in this state as to torts, are awarded when the evidence shows a reckless indifference to the rights of others or an intentional or wanton violation of those rights." Collens v. New Canaan Water Co., 155 Conn. 477,489 (1967). The injuries to the plaintiffs must be inflicted in a spirit of wanton disregard of their rights. There must be essential circumstances of aggravation and a continuation of action after the knowledge that damages were flowing from their actions. Id. 489. It is not essential that the acts be intentional. "The conduct of the defendant would appear to be at least in reckless disregard for the consequences it knew or should have known would result, and, if this element is present, an actual intention to do harm to the plaintiffs is not necessary." Id. 490.
 CONCLUSION
The court makes the following findings of facts and conclusions of law in regards to the remaining three counts.
I. First Count: Injunctive relief. The plaintiffs have the burden to prove the necessary allegations for injunctive relief The most recent testimony occurred during the late 1992 trial. Other then a subpoena for this trial issued in 2000, there were no exhibits dated after 1992. There was no evidence demonstrating what the Town of Westport and its Shellfish Commission have or have not done since the 1992 trial. The December 6, 1994 Supreme Court decision in Frillici v. Westport, supra, 231 Conn. 418, found that the State of Connecticut has jurisdiction over the clamming activities in the Cockenoe Flats area of the Westport waters. The Supreme Court found that the Town of Westport and the Westport Shellfish Commission did not have such jurisdiction. The Supreme Court reached this conclusion based on the language of the statute and an examination of the legislative history of the amendment to General Statutes § 26-280 in Public Act No. 83-236 effective October 1, 1983. There was no evidence submitted at this trial demonstrating that the Town of Westport or the Westport Shellfish Commission has conducted any activity after December 6, 1994 that exercised control or rights over clamming at Cockenoe Flats. The plaintiffs have failed to prove that the defendants have violated the State of Connecticut jurisdiction described by the Supreme CT Page 14100 Court.
Prior to December 6, 1994 there were multiple conflicting statements and opinions issued by various state and local officials and agencies concerning whether the Town or the state had jurisdiction over Cockenoe Flats. Since December 6, 1994, apparently, all agencies, both state and municipal, now agree that the state has exclusive jurisdiction. Furthermore, there is no evidence that the same state and local officials and agencies disagree with the December 6, 1994 jurisdiction decision. No party took any further appellate action after December 6, 1994.
The entry of an injunction is subject to the discretion of the court.Boesch v. Johnson Wholesale Perfume Co. 9 Conn. Sup. 110, 111 (1945). Under the circumstances, with no evidence in the last six years of the defendants' exercising any jurisdiction over Cockenoe Flats, the court exercises its discretion and denies injunctive relief.
The plaintiffs request essentially four different forms of injunctive relief. This court denies all four forms of injunctive relief: (1) The p]aintiffs want the defendants, State of Connecticut and the Department of Agriculture, to enforce the state's jurisdiction over Cockenoe Flats. The State of Connecticut is no longer a defendant in this case, the issues having been resolved in its favor. The jurisdictional issue has been authoritatively settled. This requested injunction is therefore rendered moot by the Supreme Court; (2) The plaintiffs claim a permanent injunction and/or restraining order prohibiting the defendants, Town of Westport and Westport Shellfish Commission, their agents, servants and employees, from directly or indirectly enforcing the regulations of the Town of Westport and Westport Shellfish Commission in the Cockenoe Flats area including but not limited to requiring permits. There is no evidence that after December 6, 1994, these municipal defendants have attempted to exercise jurisdiction. The plaintiffs have failed to sustain their burden of proof. The plaintiffs have an adequate remedy at law, by instituting a new lawsuit for injunctive relief in the event that Westport and its Shellfish Commission start to exercise Cockenoe Flats jurisdiction; The issue that the State of Connecticut has exclusive jurisdiction over clamming at Cockenoe Flats has been authoritatively settled by the Supreme Court decision; (3) The plaintiffs seek injunctive relief requiring the defendants, "publish at their expense an article or notice to the public that no one who clams by boat in the area in this dispute is required to have a Westport permit." The decision of December 6, 1994 is a public record and has been the subject of numerous media articles. This instant decision is also a public record and can be equally covered by the media. The plaintiffs share equal access to the news media to publish the decision of the Supreme Court indicating that no permit is necessary and that the State of Connecticut has exclusive jurisdiction CT Page 14101 over the clamming rights to Cockenoe Flats. Since the plaintiffs have an adequate remedy, this notice for publication request is denied; (4) The plaintiffs seek a refund from the municipality of all clam permits issued from January 1986, except for those clamming from Saugatuck Shores, The plaintiffs have produced no evidence of the number of permits sold nor the amount of money received from the sale of per nits. No plaintiff paid for a permit. One exhibit listed permanent clam permits in the approximate amount of $12,000. There is no breakdown description in that exhibit of clam permits issued for Saugatuck Shores. There is no evidence as to what Westport did with the permit money received. The money may or may not have gone into the general municipal coffers and spent for appropriate and proper municipal purposes. This court has insufficient information to be able to refund any money. Without evidence, this claim is speculative and must be denied.
II. Second Count: CUTPA. In order for the plaintiffs to recover damages under CUTPA, they must prove they sustained an ascertainable loss. General Statutes § 42-110g(a): Spector v. Konover, 57 Conn. App. 121,133 (2000). None of the individual plaintiffs paid a permit fee to Westport. None of the corporate defendants sustained any monetary loss. The clams were not taken for commercial purposes. The plaintiffs have not proven any monetary loss whatsoever. The plaintiffs, both individual and corporate, have failed to allege and prove that they suffered an "ascertainable loss." The plaintiffs are not entitled to the remedies of CUTPA. Kim v. Margnotta, 249 Conn. 94, 105 (1999); Haeshe v. Kissner,229 Conn. 213, 222-24 (1994); Reader v. Cassarino, 51 Conn. App. 292, 300
(1998). The issues on the CUTPA count must therefore be found for the defendants. Mungham v. Prudential Home Mortgage Company, Superior Court, judicial district of Fairfield, Housing Session, Docket No. CVBR 9603-03056 (July 6, 1996, Tierney, J.) (1996 Ct. Sup. 5211).
This court also concludes that under the facts of the case applying the factors of Connelly v. Housing Authority of New Haven the defendants are exempt from CUTPA: (1) The Westport Shellfish Commission is a creature of statute and is specifically authorized by statute to exercise certain shellfish functions. General Statutes § 26-280. The commission is pervasively regulated by state statutes regarding boundaries, General Statutes §§ 26-192, 26-195; authorization General Statutes §26-157a; and the state regulations promulgated under General Statutes § 26-154. In addition, the safety of its operations are administered by state, federal and local health regulations, General Statutes § 19-100 et seq.; (2) There is an appellate remedy to the Commission of Agriculture under General Statutes §§ 26-192 and 26-195. In addition, the administrative procedure statute provides both procedural and substantive remedies for aggrieved parties. General Statutes § 4-185; (3) All the above statutes and regulations are routinely amended. These CT Page 14102 amendments along with the evenhanded application of General Statutes § 4-185, balance the rights of all parties. A CUTPA remedy would unbalance these carefully crafted rights; (4) No decision of the Federal Trade Commission has been brought to this court's attention, wherein the FTC subjected a local Shellfish Commission to its jurisdiction. Connellyv. Housing Authority of New Haven supra, 213 Conn. 361-364.
The issues on the Second count are found for the defendants.
III. The Seventh Count: Wilful and Wanton. No attorney's fees can be awarded under CUTPA since this court has denied the relief in the Second Count. The plaintiffs' only source for attorney's fees is to be able to sustain their burden of proof as to the wilful and wanton Seventh Count. Prior to the first trial, a number of judges of the Superior Court ruled on this controversy. This court took judicial notice of the entire file in Palmer v. Department of Agriculture. Superior Court, judicial district of Fairfield at Bridgeport, Docket Number CV2350507 S. That case was an administrative appeal from the decision of Commissioner of Agriculture ruling that the Town of Westport had exclusive jurisdiction over Cockenoe Flats for clamming. Judge Landau ruled, in that administrative appeal involving similar jurisdictional issues, that the appeal was not properly brought under General Statutes § 26-195. He found that there was a controversy as to the ownership of Cockenoe Flats. Judge Landau held that the plaintiff in that administrative appeal, Frank Palmer, failed to prove sole state ownership as required by General Statutes § 26-195: "within the exclusive jurisdiction of the state." Judge Zoarski, after denying a motion for contempt, in the same lawsuit, ordered a stay of execution on May 29, 1986. This stay brought the matter back to the status quo before the stay was issued. In denying the Motion for Contempt Judge Zoarski stated, "The status quo was not defined by the court and each of the parties has a different conception of what the term signifies." Later on in the same decision, Judge Zoarski stated, "In view of the vagueness of that term . . ." Judge Zoarski also denied a Motion for Temporary injunction in that same file on July 17, 1986 stating: "There is confusion in the minds of the plaintiff and the public."
Furthermore, the Town Attorney of Westport and the Commissioner of Aquaculture both candidly admitted in the 1992 trial that their original opinions that they had issued over 10 years earlier, that the state had jurisdiction, were in error because their research had been incomplete. They had since changed their minds due to more definitive research. In the 1992 trial both of these government officials testified that Westport had jurisdiction over Cockenoe Flats.
It is the plaintiffs' burden of proof to show that the actions of the Town of Westport and the Westport Shellfish Commission in asserting CT Page 14103 jurisdiction over clamming activities at Cockenoe Flats were wilful, wanton and malicious. In light of the findings and opinions of two Superior Court Judges and the changing of testimony after full examination of the facts, by two prominent public officials, this court cannot find that the actions of the Westport defendants were wilful, malicious, arbitrary, capricious or with strong hand. The plaintiffs have not sustained their burden of proof, Rogers v. Doody, 119 Conn. 532, 534
(1935); Collens v. New Canaan Water Co., supra, 155 Conn. 488-89. The issues on the Seventh Count are therefore found for the defendants.
The issues on Counts One, Two and Seven are found for the defendants, Town of Westport and Westport Shellfish Commission. The plaintiffs are not entitled to any relief.
Costs are awarded to the defendants.
SO ORDERED.
BY THE COURT.
KEVIN TIERNEY, J.